FRED L. AND MARY A. ENGLE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6219–79.    Filed June 8, 1981.

*Thomas J. Donnelly*, for the petitioners.
*Robert M. Fowler*, for the respondent.

## OPINION

FEATHERSTON, *Judge*: Respondent determined a deficiency in the amount of $4,957.65 in petitioners' Federal income tax for 1975. Petitioners failed to take exception to certain items of adjustment; therefore, the only issue for decision is whether a percentage depletion deduction is allowable under section 613A[1] with respect to $7,600 that petitioners received in 1975, as advance royalties, under the terms of their assignment of two oil and gas leases.

All of the facts have been stipulated.

At the time the petition was filed, petitioners, who are husband and wife, were legal residents of Hartland, Wis. They filed their joint Federal income tax return for 1975 with the Internal Revenue Service Center, Kansas City, Mo.

Effective July 1, 1975, petitioner Fred L. Engle (Fred) procured an oil and gas lease covering 80 acres of land in Campbell County, Wyo. On October 6, 1975, he assigned the lease to Getty Oil Co., retaining, however, a 5-percent overriding royalty.[2] As part of the consideration for the assignment, he received an advance royalty in the amount of $6,000.

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

[2] The term "royalty," as used in the area of natural resources taxation, refers to a fractional interest in the "production" (i.e., extraction) of oil and gas or other minerals that is created by the owner (in fee) of the minerals. F. Burke & R. Bowhay, Income Taxation of Natural Resources, sec. 2.03 (1980); 1 L. Fiske, Federal Taxation of Oil & Gas Transactions, sec. 2.08

Fred was also the lessee under an oil and gas lease, effective beginning September 2, 1975, covering 160 acres of land in Carbon County, Wyo. On October 22, 1975, petitioners assigned this lease to Marshall & Winston, Inc.,[3] retaining a 4-percent overriding royalty. As part of the consideration for the assignment, they received an advance royalty in the amount of $1,600.

The amounts received as consideration for the assignments of the leases constituted the only taxable income from the described properties in 1975. There were no related expenses. Prior to the end of 1975, no discovery or exploratory work had been done on the properties covered by the leases, and no oil or gas had been produced from the properties. During 1975, petitioners had no average daily production of domestic crude oil or natural gas and no average daily secondary or tertiary production of domestic crude oil or natural gas, within the meaning of section 613A(c), quoted in note 8 *infra*, which provides a limited deduction for percentage depletion in the case of oil and gas wells.

Section 611(a) provides in part that, in the case of mineral deposits (including oil and gas wells), "there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion." In theory, this deduction is allowed in order to permit the holder of an "economic interest" in minerals in place to recover his capital investment in those minerals tax free.[4] See sec. 1.611–1(b)(1), Income Tax Regs.; *Kirby Petroleum Co. v. Commissioner*, 326 U.S. 599, 602–603 (1946); *Palmer v. Bender*, 287 U.S. 551, 557–558 (1933). For purposes of computing the deduction, Congress has provided two different methods, cost

---

(1980 rev.).

As stated in Income Taxation of Natural Resources, *supra* at sec. 2.05:

"An overriding royalty is similar to a royalty in that, for Federal tax purposes, each is a right to minerals in place that entitles its owner to a specified fraction of production, in kind or in value, and neither is burdened with the costs of development or operation. They differ in that an overriding royalty is created from the operating interest, and its term is co-extensive with that of the operating interest from which it was created.

"The overriding royalty may be carved out or retained. It is said to be carved out if the owner of the working interest assigns a right to a fractional share of production free and clear of development and operating expense. It is retained if the lessee assigns the working interest and retains a fractional share of production free of development and operating costs."

For convenience, we shall herein use the term royalty in a more general sense in referring to the advances that petitioners received on overriding royalties.

[3]Although only Fred had signed the lease as lessee, both petitioners executed the assignment to Marshall & Winston, Inc.

[4]In practice, a taxpayer may be able to recover his investment several times over due to the allowance of percentage depletion, under secs. 613 and 613A, which will be discussed *infra*.

depletion[5] and percentage depletion,[6] and, where a taxpayer is entitled to use either method, the method allowing the greater deduction for any given tax year must be used to compute depletion for that year. Secs. 1.611–1(a), 1.613–1, Income Tax Regs.

Prior to 1975, it was well settled that the recipient of advance royalties (i.e., royalties paid in advance of the actual production of a mineral) under an oil and gas lease was entitled to compute depletion on the basis of both the cost method and the percentage method and to deduct the greater of the two amounts so computed. See, e.g., *Herring v. Commissioner*, 293 U.S. 322 (1934). Effective for taxable years beginning after December 31, 1974, however, the Tax Reduction Act of 1975 added a new section, section 613A, and related provisions which, with certain exceptions, generally eliminated percentage depletion in the case of oil and gas wells.[7] One of the exceptions, on which petitioners rely, provides a limited exemption for independent producers and royalty owners. Sec. 613A(c).[8] Under this

---

[5]SEC. 612. BASIS FOR COST DEPLETION.

Except as otherwise provided in this subchapter, the basis on which depletion is to be allowed in respect of any property shall be the adjusted basis provided in section 1011 for the purpose of determining the gain upon the sale or other disposition of such property.

See sec. 1.611–2(a), Income Tax Regs.

[6]SEC. 613. PERCENTAGE DEPLETION.

(a) GENERAL RULE.—In the case of the mines, wells, and other natural deposits listed in subsection (b), the allowance for depletion under section 611 shall be the percentage, specified in subsection (b), of the gross income from the property excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 percent of the taxpayer's taxable income from the property (computed without allowance for depletion). * * * In no case shall the allowance for depletion under section 611 be less than it would be if computed without reference to this section.

But see sec. 613A regarding the percentage depletion allowance for oil and gas wells.

[7]SEC. 613A. LIMITATIONS ON PERCENTAGE DEPLETION IN CASE OF OIL AND GAS WELLS.

(a) GENERAL RULE.—Except as otherwise provided in this section, the allowance for depletion under section 611 with respect to any oil or gas well shall be computed without regard to section 613 [i.e., without regard to percentage depletion].

See also sec. 613(d), providing as follows:

(d) DENIAL OF PERCENTAGE DEPLETION IN CASE OF OIL AND GAS WELLS.—Except as provided in Section 613A, in the case of any oil or gas well, the allowance for depletion shall be computed without reference to this section.

[8]Sec. 613A(c) provides in part as follows:

(c) EXEMPTION FOR INDEPENDENT PRODUCERS AND ROYALTY OWNERS.—

(1) IN GENERAL.—Except as provided in subsection (d), the allowance for depletion under section 611 shall be computed in accordance with section 613 with respect to—

exception, the deduction of percentage depletion continues to be permitted "with respect to * * * so much of the taxpayer's

---

(A) so much of the taxpayer's average daily production of domestic crude oil as does not exceed the taxpayer's depletable oil quantity; and

(B) so much of the taxpayer's average daily production of domestic natural gas as does not exceed the taxpayer's depletable natural gas quantity;

and the applicable percentage (determined in accordance with the table contained in paragraph (5)) shall be deemed to be specified in subsection (b) of section 613 for purposes of subsection (a) of that section.

(2) AVERAGE DAILY PRODUCTION.—For purposes of paragraph (1)—

(A) the taxpayer's average daily production of domestic crude oil or natural gas for any taxable year, shall be determined by dividing his aggregate production of domestic crude oil or natural gas, as the case may be, during the taxable year by the number of days in such taxable year, and

(B) in the case of a taxpayer holding a partial interest in the production from any property (including an interest held in a partnership) such taxpayer's production shall be considered to be that amount of such production determined by multiplying the total production of such property by the taxpayer's percentage participation in the revenues from such property.

In applying this paragraph, there shall not be taken into account any production of crude oil or natural gas resulting from secondary or tertiary processes (as defined in regulations prescribed by the Secretary or his delegate).

(3) DEPLETABLE OIL QUANTITY.—

(A) IN GENERAL.—For purposes of paragraph (1), the taxpayer's depletable oil quantity shall be equal to—

(i) the tentative quantity determined under the table contained in subparagraph (B), reduced (but not below zero) by

(ii) the taxpayer's average daily secondary or tertiary production for the taxable year.

(B) PHASE-OUT TABLE.—For purposes of subparagraph (A)—

| In the case of production during the calendar year: | The tentative quantity in barrels is: |
| --- | --- |
| 1975 | 2,000 |
| 1976 | 1,800 |
| 1977 | 1,600 |
| 1978 | 1,400 |
| 1979 | 1,200 |
| 1980 and thereafter | 1,000 |

(4) DAILY DEPLETABLE NATURAL GAS QUANTITY.—For purposes of paragraph (1), the depletable natural gas quantity of any taxpayer for any taxable year shall be equal to 6,000 cubic feet multiplied by the number of barrels of the taxpayer's depletable oil quantity to which the taxpayer elects to have this paragraph apply. The taxpayer's depletable oil quantity for any calendar year shall be reduced by the number of barrels with respect to which an election under this paragraph applies. Such election shall be made at such time and in such manner as the Secretary or his delegate shall by regulations prescribe.

(5) APPLICABLE PERCENTAGE.—For purposes of paragraph (1)—

| In the case of production during the calendar year: | The applicable percentage is: |
| --- | --- |
| 1975 | 22 |
| 1976 | 22 |

average daily production" of domestic crude oil or natural gas as does not exceed the taxpayer's "depletable quantities" of crude oil and natural gas.

A taxpayer's "average daily production" of domestic crude oil or natural gas is determined by dividing his aggregate production[9] during the taxable year by the number of days in such taxable year. Sec. 613A(c)(2)(A). Under section 613A(c)(3), the taxpayer's depletable oil quantity is equivalent to a specified "tentative quantity," stated in terms of a certain number of barrels of oil "production during the calendar year," reduced by the taxpayer's average daily secondary or tertiary production of domestic crude oil and natural gas[10] for the "taxable year."[11] The taxpayer's depletable natural gas quantity is equal to the number of barrels of his depletable oil quantity that he elects to convert to depletable natural gas quantity,[12] and the taxpayer's depletable oil quantity is reduced by the number of barrels for which he has made such an election.[13]

The number of barrels constituting the taxpayer's tentative depletable oil quantity is set forth in a "Phase-out table" in

| | |
|---|---|
| 1977 | 22 |
| 1978 | 22 |
| 1979 | 22 |
| 1980 | 22 |
| 1981 | 20 |
| 1982 | 18 |
| 1983 | 16 |
| 1984 and thereafter | 15 |

[9]In the case of a taxpayer holding a partial interest in the production of oil and gas from any property, his production for purposes of sec. 613A(c) is to be "determined by multiplying the total production of such property by the taxpayer's percentage participation in the revenues from such property." Sec. 613A(c)(2)(B).

[10]Separate provisions are made for the allowance of percentage depletion on secondary or tertiary production of domestic crude oil and natural gas. See sec. 613A(c)(6).

[11]Under sec. 613A(c)(2), a taxpayer's average daily production is determined with reference to his aggregate production during the "taxable year." However, the phase-out table in sec. 613A(c)(3) prescribing the tentative number of barrels in the taxpayer's depletable oil quantity, as well as the table in sec. 613A(c)(5) specifying the percentage to be used in computing percentage depletion, is keyed to the "calendar year." Thus, if a taxpayer is on a fiscal year, "each portion of such taxable year which occurs during a single calendar year shall be treated as if it were a short taxable year." Sec. 613A(c)(10).

[12]Under sec. 613A(b), which is not pertinent here, certain domestic gas wells are exempt from the repeal of percentage depletion in the case of oil and gas. Natural gas that is exempt under sec. 613A(b) is not to be taken into account in determining a taxpayer's depletable natural gas quantity under sec. 613A(c). Sec. 613A(c)(11).

[13]For purposes of this election, 6,000 cubic feet of natural gas is equivalent to 1 barrel of oil. Sec. 613A(c)(4).

section 613A(c)(3)(B). The number of barrels in this table is gradually reduced in the case of "production during the calendar year" from 2,000 barrels in 1975 to 1,000 barrels in 1980 and thereafter. In this connection, section 613A(c)(5) sets forth a table of percentages that are applicable in computing the percentage depletion allowance in the case of "production during the calendar year." The percentage to be used gradually declines from 22 percent in 1975 to 15 percent in 1984 and thereafter.

Respondent, in this case and in proposed regulations under section 613A(c), has taken the position that the exemption for independent producers and royalty owners does not allow percentage depletion on advance royalties paid under an oil and gas lease except to the extent that they are earned or "recouped" through actual production of oil or gas during the taxable year in which the advance royalties are received.[14] In support of his position, respondent emphasizes the language in section 613A(c)(1) stating that the allowance for depletion under section 611 shall be computed in accordance with section 613 only "with respect to * * * so much of the taxpayer's average daily production" of domestic crude oil or natural gas as does not exceed the depletable oil and natural gas quantities specified in section 613A(c)(3) and (4). Respondent reasons that petitioners, having *no* "average daily production" of oil or natural gas for 1975, have nothing with respect to which percentage depletion may be computed in accordance with section 613.

Petitioners, on the other hand, emphasize that percentage depletion was allowable with respect to advance royalties prior to the enactment of section 613A, notwithstanding the absence of production of oil or gas during the year of receipt of such payments. They point out that the depletion allowance has always been "based on the *proceeds* derived from the property" and argue that, therefore, "no *quantity* of oil or gas is required for purposes of the calculation." Petitioners contend that the quantities of production specified in section 613A(c) were simply intended to limit the applicability of the exemption for indepen-

---

[14]See sec. 1.613A–3(a)(4), examples (*4*) and (*5*), Proposed Regs., 42 Fed. Reg. 24281 (May 13, 1977). The proposed regulations provide that percentage depletion is allowable under sec. 613A(c) only with respect to gross income attributable to oil and gas produced in a prior or current taxable year. See sec. 1.613A–7(f), Proposed Regs., 42 Fed. Reg. 24287 (May 13, 1977).

dent producers and royalty owners to those producers and royalty owners with production levels below the ceiling quantities and that prior law was to be retained in full with respect to that class of persons.[15] Thus, petitioners maintain that "zero [production] is within the limitation just as is one drop of oil or one cubic centimeter of natural gas" and that, therefore, they are entitled to compute percentage depletion on the advance royalties in 1975.

We hold that petitioners are not entitled to deduct in 1975, a year in which they had no production of oil or gas, percentage depletion computed with reference to their $7,600 in advance royalties. Petitioners may deduct only cost depletion with respect to that sum, and they have made no claim to such a deduction.

As petitioners point out, the amount of the percentage depletion allowance under section 613(a) was computed prior to the enactment of section 613A(c) on the basis of the "gross income from the property," without regard to quantities of production. Nevertheless, section 613A(c) now imposes limitations on the percentage depletion allowance in terms of quantities of production and, as we read it, permits the computation of percentage depletion only with respect to gross income attributable to what might be called an exempt quantity of crude oil or natural gas production. Therefore, unless gross income can be identified as attributable to an exempt quantity of production (which, of course, can hardly be done in the case of payments received in advance of production), the computation of percentage depletion is not permitted.

In our view, the express language of section 613A(c) limiting the percentage depletion deduction to stated quantities of production is so clear that it permits no other reasonable interpretation. Section 613A(c)(1) allows percentage depletion

---

[15]Petitioners rely heavily on the following portion of the Conference Committee report on the Tax Reduction Act of 1975, Conf. Rept. 94–120 (1975), 1975–1 C.B. 624, 629–630:

"*Senate amendment.*—Under the Senate amendment, the deduction for percentage depletion is generally eliminated with respect to oil and gas produced on or after January 1, 1975, with certain exceptions. These include the exceptions provided under the House bill. In addition, the Senate amendment *retains percentage depletion* at 22 percent on a permanent basis for the small independent producer to the extent that his average daily production of oil does not exceed 2,000 barrels a day, or his average daily production of natural gas does not exceed 12,000,000 cubic feet. Where the independent producer has both oil and natural gas production, the exemption must be allocated between the two types of production. [Emphasis added.]"

only with respect to a limited amount of the taxpayer's "average daily production." As previously noted, the taxpayer's "average daily production" is to be determined by dividing his aggregate production by the number of days in "the taxable year"; if there has been no aggregate production, there can be no "average daily production," and percentage depletion is not, therefore, allowable.

Further support for this conclusion is found in the table in section 613A(c) specifying the tentative number of barrels in a taxpayer's "depletable oil quantity" (to which the "depletable natural gas quantity" is keyed) and in the table specifying the declining applicable percentage to be used in computing the percentage depletion deduction. Both tables refer to "production during the calendar year." Sec. 613A(c)(3) and (5). Given this statutory language, we think it clear that percentage depletion is allowable under section 613A(c) in a taxable year only if oil or natural gas has been produced, and the amount of the deduction must be computed by reference to the taxpayer's "average daily production," the depletable oil and natural gas quantities, and the applicable rates set forth in section 613A(c)(5) for the calendar year of production.[16] Because petitioners had no "average daily production" in 1975, they are not entitled to percentage depletion with respect to the advance royalties of $7,600 received in that year.

Petitioners' position that section 613A(c) retains prior law for independent producers and royalty owners, "so long as the quantities applicable to the exemption are not exceeded," is without merit. Section 613A(c) does not impose a production ceiling for the purpose of distinguishing a class of taxpayers entitled to the benefits of the exemption from those who are not. Independent producers and royalty owners having average daily production in excess of the statutorily prescribed depletable oil or natural gas quantities *are* entitled to use percentage depletion. The effective rate per unit of oil or gas is modified for those who have production in excess of their depletable quantities,[17]

---

[16]See note 11 *supra.*

[17]In this connection, see and compare L. Bravenec, "Continued Availability of Percentage Depletion on Oil and Gas," 23 Oil & Gas Tax Q. 204, 215–216 (1974–75), with T. Englebrecht &

see sec. 613A(c)(7);[18] but independent producers and royalty owners are not denied percentage depletion deductions merely because they have oil or gas production in excess of the depletable quantities. Only those persons who are "retailers" or "refiners" (or persons related to "retailers" or "refiners"), as those terms are defined in section 613A(d), are excluded from the class of taxpayers entitled to the benefits of the exemption.

Nor does the language in the Conference Committee report, quoted in note 15 *supra*, to the effect that the Senate version of the bill "retains percentage depletion" for the small independent producer, aid petitioners' cause. That language was clearly intended to refer to the fact that, under the Senate version, the 22-percent rate for percentage depletion was to be retained on a permanent basis in connection with the exemption for independent producers. It was not the Senate version of the bill, but a Conference substitute, that was enacted into law. The Conference report makes it plain that, although the Conference substitute followed the Senate version by providing a limited exemption for independent producers,[19] the exemption was to be gradually phased down both in terms of the exempt quantity of production and the rate to be applied in computing percentage

---

R. Hutchins, "Percentage Depletion Deductions for Oil and Gas Operations: A Review and Analysis," 56 Taxes 48, 54 (1978).

[18]Sec. 613A(c)(7) provides as follows:

(7) SPECIAL RULES.—

(A) PRODUCTION OF CRUDE OIL IN EXCESS OF DEPLETABLE OIL QUANTITY.—If the taxpayer's average daily production of domestic crude oil exceeds his depletable oil quantity, the allowance under paragraph (1)(A) with respect to oil produced during the taxable year from each property in the United States shall be that amount which bears the same ratio to the amount of depletion which would have been allowable under section 613(a) for all of the taxpayer's oil produced from such property during the taxable year (computed as if section 613 applied to all of such production at the rate specified in paragraph (5) or (6), as the case may be) as his depletable oil quantity bears to the aggregate number of barrels representing the average daily production of domestic crude oil of the taxpayer for such year.

(B) PRODUCTION OF NATURAL GAS IN EXCESS OF DEPLETABLE NATURAL GAS QUANTITY.—If the taxpayer's average daily production of domestic natural gas exceeds his depletable natural gas quantity, the allowance under paragraph (1)(B) with respect to natural gas produced during the taxable year from each property in the United States shall be that amount which bears the same ratio to the amount of depletion which would have been allowable under section 613(a) for all of the taxpayer's natural gas produced from such property during the taxable year (computed as if section 613 applied to all of such production at the rate specified in paragraph (5) or (6), as the case may be) as the amount of his depletable natural gas quantity in cubic feet bears to the aggregate number of cubic feet representing the average daily production of domestic natural gas of the taxpayer for such year.

[19]The House version of the bill contained no exemption for independent producers and royalty owners.

depletion. Conf. Rept. 94–120 (1975), 1975–1 C.B. 624, 630. The Conference report does not, as petitioners urge, indicate that prior law was to be retained in full for a certain class of producers and royalty owners.[20]

Section 613A(c)(1) does state, however, that "the allowance for depletion under section 611 shall be computed *in accordance with section 613* [emphasis added]" with respect to so much of the taxpayer's average daily production of oil or gas as does not exceed his depletable quantities. Section 613(a)[21] provides that, in computing percentage depletion, the measure of the deduction is a specified percentage of the "gross income from the property." Further, section 613(a) provides that the allowance shall not exceed 50 percent of "the taxpayer's taxable income from the property (computed without allowance for depletion)."

A large body of law has developed under section 613(a) as to the meaning of "gross income from the property" in relation to oil and gas wells. Extensive regulations have been issued to define the phrase "taxable income from the property" as used in section 613.[22] That section, its predecessors, and the regulations have been the subject of numerous Revenue Rulings and court opinions on how the "gross income from the property" and "taxable income from the property" are to be computed.[23] We think the language in section 613A(c) to the effect that the percentage depletion allowed to independent producers and royalty owners "shall be computed in accordance with section 613" means simply that the computation is to follow the principles already developed for computing percentage depletion for oil and gas, subject, of course, to the provisions of section 613A. Thus, percentage depletion under section 613A(c) is to be computed with reference to the "gross income from the property" *attributable to* the exempt portion of a taxpayer's "average

---

[20]Aside from the Conference report cited above, which itself does not adequately explain the complex provisions of sec. 613A(c), the legislative history is quite sketchy. Sec. 613A was introduced as a Senate floor amendment, and as a result the provision was not considered in either the House report (H. Rept. 94–19 (1975), 1975–1 C.B. 569) or the Senate report (S. Rept. 94–36, (1975), 1975–1 C.B. 590) on the bill leading to the Tax Reduction Act of 1975. Similarly, the substance of the debates with respect to the exemption for independent producers and royalty owners is of little assistance in interpreting the provisions of sec. 613A(c).

[21]See note 6 *supra.*

[22]Sec. 1.613–5, Income Tax Regs.

[23]See the discussion entitled "Taxable Income from the Property for Depletion Purposes" in Miller's Oil & Gas Federal Income Taxation, ch. 10, p. 145 (J. Houghton ed. 1980).

daily production," but the allowance is limited to 50 percent of the "taxable income from the property."

It is true that, as petitioners emphasize, the Supreme Court in *Herring v. Commissioner*, 293 U.S. 322, 328 (1934), rejected the contention that some production of oil or gas was a prerequisite to the allowance of percentage depletion on a lease bonus or advance royalty received upon the execution of an oil and gas lease. The basis for this holding was that bonuses and advance royalties are not capital gains but "payment[s] in advance for oil or gas to be extracted, and * * * [are] therefore taxable income." *Herring v. Commissioner, supra* at 324. However, the statute there involved (the predecessor of sec. 613) made "gross income from the property," without qualification, the base for computing percentage depletion.[24] The Court did not have before it the subsequently enacted provisions of section 613A(c) allowing percentage depletion, as we have discussed above, only with respect to the exempt portion of a taxpayer's average daily production of crude oil or natural gas. Under section 613A(c), where there has been no production during the taxable year of receipt, percentage depletion is not allowable in that year with respect to advance royalties paid under an oil and gas lease.

Of course, actual production of oil or gas at some point in time has always been an implicit requirement of the allowance for depletion under either the cost or the percentage method.[25] However, we do not think, as petitioners appear to contend, that income from possible production in a future year will suffice for the purposes of section 613A(c). In effect, this would mean that "production" as used in section 613A(c) should be read to mean "sales of future production."[26] There is no legislative history or discernible legislative purpose that will support such a rewriting of the statutory language.

---

[24]Even so, if there was no production of oil or gas prior to the cancellation of the lease (i.e., no actual depletion), the taxpayer was required to restore the previously deducted depletion to income. *Douglas v. Commissioner*, 322 U.S. 275, 285 (1944); *Sneed v. Commissioner*, 119 F.2d 767, 771 (5th Cir. 1941), affg. 40 B.T.A. 1136 (1939), cert. denied 314 U.S. 686 (1942).

[25]See note 24 *supra*; sec. 1.612–3(a)(2) and (b)(2), Income Tax Regs.

[26]See M. Backus, "A Stitch in Time Necessary to Save Lease Bonus Depletion," 55 Taxes 313 (1977); L. Bravenec, "Continued Availability of Percentage Depletion on Oil and Gas," 23 Oil & Gas Tax Q. 204, 211 (1974–75) (while contending that "production" as used in sec. 613A(c) should be interpreted as meaning "sales," the author notes that it "is difficult to sustain * * * [such a] construction by reference to the statutory language").

Section 613A(c) does not refer merely to production in general, but to a taxpayer's aggregate production "during the taxable year." In prescribing the depletable quantities, the section specifies a quantity of oil measured in "barrels" of "production during the calendar year" and a quantity of natural gas measured by reference to "barrels" of oil and "cubic feet" of gas. The section also makes important distinctions that depend on the type of production, i.e., oil versus natural gas, and the method of production, i.e., primary versus secondary or tertiary. Sec. 613A(c)(6) and (7). It is difficult to conceive what language Congress could have chosen to state more clearly a requirement tying the allowance of percentage depletion to the actual production of oil or gas on an annual basis.

Finally, numerous practical problems would arise in the application of section 613A(c) if production were interpreted to include royalties received in advance of production. When advance royalties are received upon the execution or assignment of a lease, the lessor may not know what mineral will be discovered or (in some cases) what method of recovery will be required to produce it. As pointed out above, the section prescribes different formulae for computing a taxpayer's "depletable oil quantity" and a taxpayer's "depletable natural gas quantity." Section 613A(c)(6) prescribes an entirely separate set of rules with respect to the allowance of percentage depletion on secondary and tertiary production. If a taxpayer has "excess production" during the taxable year, he must allocate the taxable income from the property between oil and gas production. Sec. 613A(c)(7). It should also be noted that section 613A(b)(2), as amended by the Energy Tax Act of 1978,[27] allows percentage depletion at the rate of 10 percent with respect to "any qualified natural gas from geopressured brine." Thus, if the term "production" as used in section 613A(c) is read so as to include income from the production of future years, there may be no way to determine at the time such income is received whether the section 613A(b) and (c) limitations on oil or gas and on primary or (in some situations) secondary production, or natural gas from geopressured brine, would apply.

---

[27]Pub. L. 95–618, 92 Stat. 3204 (Nov. 9, 1978). The amendment applies to natural gas produced from geopressured brine and "which is produced from any well the drilling of which began after September 30, 1978, and before January 1, 1984."

In our view, the fact that section 613A(c) was written into the Internal Revenue Code as a limited exception to the general repeal of percentage depletion for oil and gas militates against giving that section an expansive and extraordinary interpretation. Given the language of the statute and the absence of any legislative history indicating that the statute does not mean what it says, percentage depletion may not be deducted except with respect to exempt quantities of production. In the case of royalties paid in advance of production, the statutes here applicable limit the taxpayer to a deduction for cost depletion.

To reflect the foregoing,

*Decision will be entered for the respondent.*[28]

Reviewed by the Court.

NIMS, *J.*, did not participate in the consideration or disposition of this case.

GOFFE, *J.*, concurring: I wholeheartedly concur, not only in the result, but also in the rationale of the majority opinion, which, contrary to the complaint in Judge Fay's dissent, clearly explains why percentage depletion is not allowable against advance royalties which are not attributable to actual, existing production. Though I am inclined to pinpoint some of the aspects of our discourse on the thorny problems posed by section 613A, I.R.C. 1954,[1] I am moved to write this concurrence primarily because the dissenting opinion by Judge Fay suffers greatly from flaws of construction and oversights in application.

The majority's recitation of the historical treatment of advance royalties for percentage depletion purposes, as well as its explanation of the basic provisions of section 613A, needs no elaboration. It is undisputed that, prior to the enactment of section 613A, percentage depletion was allowable on advance royalties received, whether they were to be recouped against future production or not. However, who can deny that the 1975 legislation drastically reduced allowable percentage depletion?

---

[28]See *Glass v. Commissioner*, 76 T.C. 949 (1981), filed this day.

[1]All section references are to the Internal Revenue Code of 1954 as amended.

By dint of the construction of the disallowance, it is now the exception, rather than the rule, when percentage depletion is allowable.

At the outset, it should be pointed out that the 1975 revision to the previously existing percentage depletion scheme is a drafting nightmare. The denial contained in the cross-referencing of section 613(d), the almost-total denial contained in section 613A(a), and the exemption contained in and the cross-referencing of section 613A(c)(1), combine to provide a maze through which we must now approach the percentage depletion deduction. Furthermore, the controlling statute, as amended, fails to directly address not only the issues before us, but also raises multiple collateral issues which we are not asked to decide in this case. It is doubtful whether even reasonable regulations, if such regulations are forthcoming from the Commissioner, can completely unscramble the present version of this item of "legislative grace."

The majority opinion has, in my view, taken a mangled statute that is unattended by any germane or informative legislative history and has interpreted it by a direct and simple construction of one of the least ambiguous words in the statute: production. Repeated readings of sections 611, 612, 613, and 613A lead me to the conclusion that percentage depletion, to the extent allowable at all, can be obtained only with respect to a limited quantity of actual production (oil or gas extracted from the ground) per year. The year of extraction controls the number of barrels of production with respect to which percentage depletion is allowable (such must be the necessary implication of a yearly depletable oil quantity—see sec. 613A(c)(3)), and it is that same year that determines the appropriate percentage to be applied to such barrels (such is the logical implication of the columnar heading in section 613A(c)(5) which states "In the case of production during the calendar year").

Judge Fay's dissenting opinion focuses almost entirely upon situations where extraction and payment for the extracted hydrocarbon occur in different taxable years. This is the exception rather than the commonplace situation. It is even more exceptional in the case of royalty owners than independent producers. Normally, oil or gas is sold in the taxable year in which it is extracted and the matching of the income with the allowable percentage depletion is simple.

If, for some reason, payment for the hydrocarbon is received in a calendar year subsequent to the year of extraction, we must determine in which taxable year, if either, the taxpayer is entitled to percentage depletion. This question is answered in section 1.613A–3(a)(4), example (7), Proposed Regs., 42 Fed. Reg. 24281 (May 13, 1977), as follows:

*Example (7).* H, a calendar year taxpayer, owns a domestic oil well which produced 100,000 barrels of oil in 1975. The proceeds from the sale of 15,000 barrels of that production are not includible in H's income until 1976. The 15,000 barrels produced in 1975 are included in H's average daily production for 1976 and excluded from such production for 1975.

At first blush, the example appears reasonable. It merely provides for tracing the income from the oil extracted and applying the barrels produced to the taxable year the income is received. Because of the two new major ingredients introduced into the allowable percentage depletion deduction by the 1975 amendment, I conclude that the method is not fair. The 1975 revision to the percentage depletion deduction established an annual limitation on the deduction which varies for different calendar years from 1975 to 1980 and it also specified a variable percentage allowable for different calendar years from 1980 to 1984. Because of these variables, it makes a substantial difference as to which taxable year one refers in allowing percentage depletion on hydrocarbon income derived from the sale of production extracted in an earlier taxable year.

The majority clearly holds that the intent of the statute is to allow the percentage depletion deduction for hydrocarbons "produced." "Production" means extraction. No one familiar with the "oil business" would seriously question such a definition of "production." Because the focus of the percentage depletion deduction is on production (or extraction), in my view, that identification should be preserved if payment for the hydrocarbon fortuitously fails to coincide with extraction in the same calendar year. The barrel limitation expressed as average daily production in section 613A(c)(2) refers to the taxpayer's "production" for any taxable year; the phase-out table in section 613A(c)(3)(B) is headed "In the case of production *during* the calendar year [emphasis added]"; and in section 613A(c)(5), the heading for the applicable percentage for specified calendar years reads, "In the case of production *during* the calendar year [emphasis added]." Because these limitations (barrel limitation

and percentage allowable) are unmistakably defined in terms of production during the year, the income from all qualifying production in that year should be subject to percentage depletion regardless of the year of payment for that production. I would apply that rationale to example (7) above by holding that the 15,000 barrels of oil produced in 1975 would be entitled to percentage depletion of 22 percent regardless of the percentage allowable in the year the oil is sold. If the years were instead 1980 (year of extraction) and 1981 (year of sale), I would allow 20-percent depletion on the 15,000 barrels rather than 18 percent.

As to the barrel limitation on the 15,000 barrels, I would also look to the year of extraction rather than a subsequent year of sale.

To illustrate this concept, let us assume that the taxpayer had 380,000 barrels of production in 1981 of which 25,000 barrels were not sold until 1982. I would allow no percentage depletion on the 25,000 barrels sold in 1982 because in the year of extraction the taxpayer exceeded the 365,000-barrel limitation.

Let us assume instead that the taxpayer had only 365,000 barrels of production in 1981, all of which were sold in 1981 except 30,000 barrels, which were sold in 1982. Assume further that in 1982 the taxpayer extracted 365,000 barrels. Because the oil extracted in 1981, including the 30,000 barrels sold in 1982, did not exceed the taxpayer's limitation of 365,000 barrels when extracted, he should be entitled to percentage depletion on the proceeds from the sale of such oil in 1982, and he should be allowed percentage depletion at the rate of 20 percent (allowable for 1981) rather than 18 percent (allowable for 1982).

Although I have referred, for the sake of clarity, to specific barrels being extracted in one year and sold in the next, I recognize that a literal tracing of barrels of oil (or cubic feet of gas) would present a recordkeeping nightmare. However, such tracing is unnecessary. By taking a cue from normal first-in, first-out inventory accounting, it is fairly easy to devise a system whereby the appropriate percentage depletion allowable with respect to production extracted in a given taxable year and sold in a subsequent taxable year can be determined on the basis of the amount of extraction, the tentative quantity, and the applicable percentage for such taxable year. Any unsold production from a taxable year can be "inventoried," by recording not

only the amount remaining unsold but also the appropriate percentage by which the proceeds from the sale of such production will be multiplied when it is eventually sold to arrive at allowable percentage depletion. Working from the assumption that the first oil or gas sold in a taxable year is the oldest oil or gas in inventory, all of the allowable percentage depletion will eventually be matched with the proceeds from the sale of the production which qualified for percentage depletion.

The following example illustrates this procedure: assume extraction and sales of oil (at an assumed price of $10 per barrel) in these amounts for the calendar years 1981 through 1983:

|  | *1981* | *1982* | *1983* |
|---|---|---|---|
| Extraction (in barrels) ................... | 1,460,000 | 365,000 | 36,500 |
| Sales (in barrels) ........................... | 730,000 | 365,000 | 766,500 |
| Sales (in dollars) ........................ | $7,300,000 | $3,650,000 | $7,665,000 |

We should note that, in reality, the percentage depletion limitations are not imposed by applying the applicable percentage to a limited amount of barrels (though that is the effect and basic concept of the scheme), but rather, such limitations are imposed by reducing the percentage applied to *all* barrels. Secs. 613(a), 613A(c)(1), (5) and (7). For purposes of this example, I will refer to this percentage which is actually applied to all production income (which percentage may be equal to or less than the relevant applicable percentage specified in section 613A(c)(5)) as the "percentage depletion fraction" (PDF).

According to section 613A(c)(1), if a taxpayer's average daily production (ADP) is less than or equal to his depletable oil quantity (DOQ), the PDF equals the applicable percentage (AP) set forth in section 613A(c)(5). If, however, a taxpayer's ADP is greater than his DOQ, his PDF equals the AP multiplied by a fraction the numerator of which is the DOQ and the denominator of which is the ADP. Thus, in our example, the PDF for each year is as follows:

|  | *1981* | *1982* | *1983* |
|---|---|---|---|
| ADP[1] | 4,000 | 1,000 | 100 |
| DOQ[2] | 1,000 | 1,000 | 1,000 |
| AP[3] | 0.20 | 0.18 | 0.16 |
| PDF[4] | 0.05 | 0.18 | 0.16 |

[1] ADP = Total production divided by number of days in the taxable year. Sec. 613A(c)(2)(A).

$$1981 = 1,460,000 \div 365 = 4,000$$
$$1982 = 365,000 \div 365 = 1,000$$
$$1983 = 36,500 \div 365 = 100$$

[2] Sec. 613A(c)(3).
[3] Sec. 613A(c)(5).
[4] Because ADP is greater than DOQ in 1981—

$$PDF = (DOQ \div ADP) \times 0.20 = (1000 \div 4000) \times 0.20 = 0.05.$$

In 1982 and 1983, ADP is less than DOQ, so PDF = AP.

All oil extracted in those years should eventually be depleted at the PDF rate applicable to the year of such extraction, regardless of when sold. If that occurs, the total percentage depletion allowed would be as follows:

|  | *1981* | *1982* | *1983* | *Total* |
|---|---|---|---|---|
| Extraction ................ | 1,460,000 | 365,000 | 36,500 | |
| Times sales price ...... | × $10 | × $10 | × $10 | |
| Gross income ............ | $14,600,000 | $3,650,000 | $365,000 | |
| Times PDF .............. | × 0.05 | × 0.18 | × 0.16 | |
| Total percentage depletion ................ | 730,000 | 657,000 | 58,400 | $1,445,400 |

Mechanically, each year's percentage depletion deduction (assuming that the 50 percent of taxable income from the property limit is not exceeded) would be computed as follows:

*1981*
Total sales—730,000 barrels
PDF × (barrels sold × price per barrel)
0.05 × (730,000 × $10)
0.05 × $7,300,000
$365,000—1981 percentage depletion

| Inventory (in barrels) ...... Beginning ...................................................... 0 |
| Extracted[1] ............................ 1,460,000 @ 0.05 |
| Subtotal ................................. 1,460,000 @ 0.05 |
| Sold ......................................... (730,000 @ 0.05) |
| Ending ..................................... 730,000 @ 0.05 |

*1982*
Total sales—365,000 barrels
PDF × (barrels sold × price per barrel)
0.05 × (365,000 × $10)[2]
0.05 × $3,650,000
$182,500—1982 percentage depletion

| Inventory | Beginning | 730,000 @ 0.05 |
| | Extracted | 365,000 @ 0.18 |
| | Subtotal | 730,000 @ 0.05 |
| | | 365,000 @ 0.18 |
| | Sold | [2](365,000 @ 0.05) |
| | Ending | 365,000 @ 0.05 |
| | | 365,000 @ 0.18 |

*1983*

Total sales—766,500 barrels

PDF × (barrels sold × price per barrel)

$[0.05 \times (365,000 \times \$10)] + [0.18 \times (365,000 \times \$10)] + [0.16 \times (36,500 \times \$10)]$

$\$182,500 + 657,000 + 58,400$

$\$897,900$—1983 percentage depletion

| Inventory | Beginning | 365,000 @ 0.05 |
| | | 365,000 @ 0.18 |
| | Extracted | 36,500 @ 0.16 |
| | Subtotal | 365,000 @ 0.05 |
| | | 365,000 @ 0.18 |
| | | 36,500 @ 0.16 |
| | Sold | (365,000 @ 0.05) |
| | | (365,000 @ 0.18) |
| | | (36,500 @ 0.16) |
| | Ending | 0 |

[1] Must note the PDF previously calculated for production extracted that year.

[2] Use FIFO to determine what barrels were sold, and, therefore, which PDF to use.

Thus, the cycle is complete. Note that the total percentage depletion arrived at in these detailed calculations ($365,000 + $182,500 + $897,900 = $1,445,000) equals the amount calculated at the outset of this example, *supra* at page 918. No actual physical tracing of extraction is needed because this inventory-type method will accomplish the results sought by my interpretation of the statute. Some may quibble that the assumption of a constant price of oil invalidates this example. On the contrary, if prices rise or fall, the above-outlined method will result in percentage depletion calculated on the basis of the actual "gross income from the property" in the year the extraction is sold, which result dovetails nicely with the general percentage depletion formula in section 613(a). The allowability, as well as the appropriate rate, of percentage depletion is determined as of the taxable year of extraction, as it should be.

Although I speculate as to whether the Commissioner may, by regulation, establish such a scheme when the statute does not

specifically authorize it, the question apparently does not disturb the Commissioner because he has proposed, also without statutory mandate, his own brand of carryforward set forth above. That being the case, I would urge the Commissioner, who has just prevailed in the instant case as to advance royalties and in *Glass v. Commissioner*, 76 T.C. 949 (1981), as to lease bonuses, to reexamine his proposed regulations (which have been proposed since 1977) in light of the opinions in these two cases in order to make them more compatible with the statute as amended in 1975. Surely, our holdings in these two cases should encourage the Commissioner to reexamine the proposed regulations and attempt to finalize them in a form that correctly interprets the statute. Hope springs eternal that such an admonition will be heeded.

My proposal, which I contend is far from the characterization of "impossible" (dissenting opinion, *infra* at 942 note 6), easily conforms with the general requirements of section 613(a), a section which the dissent over and over . . . and over . . . abjures us not to neglect, that the deduction is allowable by taking a percentage of the gross income from the property.

Having said all this, it is easy to see the most glaring flaw in the analysis of the dissent. The statute requires a counting of the barrels of production in a taxable year in order to determine what production percentage depletion will be allowed "with respect to" and to determine the applicable percentage "in the case of production during the calendar year." Sec. 613A(c)(5). One cannot count barrels of production that do not yet, and may never, exist. When a taxpayer receives an advance royalty, no one knows whether hydrocarbons will be extracted from that property. A cursory examination of newspaper accounts of drilling activity readily demonstrates the folly of concluding that production will necessarily follow receipt of an advance royalty. As the majority points out so clearly on pages 925–927 of its opinion, the problems of statutory construction and obvious practical problems of imputing possible future production into a present-year calculation under new section 613A are insurmountable.

Similarly I, like the majority, am convinced that *Herring v. Commissioner*, 293 U.S. 322 (1934), provides little guidance here because of the drastic changes in the law made subsequent to that decision. No matter how many times the dissent proclaims

that we are undermining the holding in *Herring*, the fact of the matter is that *Herring* simply does not apply. Just as the *Cohan* rule became largely irrelevant in the travel and entertainment expense context after the enactment of section 274, the *Herring* decision no longer holds complete sway in the percentage-depletion-on-advance-royalty context after the 1975 enactment of sections 613(d) and 613A.

The chant found throughout Judge Fay's dissenting opinion is that because section 613A(c)(1) provides that the allowance for depletion under section 611 "shall be computed in accordance with section 613," production has to have some relation to gross income. In such incantations, he continually states the obvious while overlooking the stated, i.e., that percentage depletion is now allowed only with respect to a limited amount of actual production. Of course, because percentage depletion is derived by multiplying gross income from the property by the applicable percentage, production must have some relation to gross income. Thus, only gross income attributable to the sale of so much of a taxpayer's average daily production as does not exceed his depletable quantity is now eligible for percentage depletion. The now-extant sections controlling this deduction do not speak to the timing of the deduction, except that section 613(a) requires that there be some gross income from the property in a taxable year as a necessary precondition to having something to multiply by the applicable percentage. Production limits the amount of the deduction; ergo, in order to compute the percentage depletion deduction for a taxable year, it is necessary to have had some actual production before or during such taxable year in order to qualify some barrels under section 613A(c), the proceeds from the sale of which constitute the gross income of which section 613(a) speaks. When the dissent starts from the above-stated proposition that production and income must be related, and reasons to the conclusion that hypothetical future production will somehow support a present percentage depletion deduction, it has engaged in a brand of deductive sophistry which I am loath to embrace.

Thus, I fully support the holding and rationale of the majority opinion. Though the author of that opinion did not need to extend its legal reasoning as far as I have in order to dispose of the issue before us, it is apparent that much of what I have outlined above is the necessary implication of the holding

embodied in the majority opinion. Moreover, I agree that an alternative holding based upon a theory such as that found in the dissenting opinion would produce numerous practical problems, as outlined in the majority opinion at pages 926 and 927. The dissent's attempt to address these problems is feeble. (See dissenting opinion, *infra* at 948 note 15). Since 6,000 cubic feet of gas may not sell for the same price as a barrel of oil, the need to know the makeup of the production is critical, particularly where there is "excess production." Sec. 613A(c)(7)(A) and (B). In addition, it will be the exception, rather than the rule, when a taxpayer knows, at the time an advance royalty or bonus is paid, whether secondary or tertiary recovery methods will be necessary or economically feasible. Furthermore, the dissent never addresses this obvious question: if an unrecouped advance royalty represents production in the year of receipt, how would one convert the raw dollar amount received into a quantity of barrels for purposes of determining the taxpayer's average daily production under section 613A(c)? How many dollars equal a barrel of oil, or, for that matter, 6,000 cubic feet of gas? The practical problem surely exists, even though the dissent does not, by reason of the small amount here involved, feel compelled to address it.

The dissent's strident examples prove nothing. Under the majority's approach, which has the virtue of interpreting the word "production" in its ordinary, everyday sense (*Malat v. Riddel*, 383 U.S. 569 (1966)), the otherwise allowable percentage depletion on advance royalties recoupable against future production which are paid but not recouped in the year of payment will be lost forever. Quaere whether or not this is an inequitable result inasmuch as the taxpayer has received, in exchange for risking the loss of otherwise allowable percentage depletion, an advance royalty on production which may never exist.[2] Under the dissent's approach, the same inequitable result suggested by example (7) of section 1.613A–3(a), Proposed Regs., 42 Fed. Reg. 24281 (May 13, 1977), will occur, though for a slightly different reason (see discussion, *supra*). The proposed regulation would

---

[2]A similar result obtains, stresses the dissent, when production is sold prior to extraction. If, in such a highly improbable situation, the well is dry or blows out, and the seller must refund the sales proceeds, then such amounts are mere deposits. If the seller may keep the funds, again I wonder whether or not he has gotten the better end of the trade between money in hand and possible percentage depletion deductions.

throw unsold, but otherwise allowable production, into the second year and include it in the average daily production computation, which treatment could produce an average daily production in excess of the allowable depletable quantity in the later year, resulting in partial permanent disallowance of percentage depletion, even though actual production in neither year exceeded the maximum depletable amount. Likewise, the dissent's approach would permanently deprive a similarly situated taxpayer of the same amount of depletion. By looking only at income, and then deriving from that amount the number of barrels represented, the dissent would say that all of the "production" occurred in the later year. Under an example where a taxpayer produced 365,000 barrels in 1981, 365,000 barrels in 1982, and sold all 730,000 barrels in 1982, the dissent's approach would conclude that the average daily production in 1982 is 2,000 barrels. Since the tentative quantity for 1982 is 1,000 barrels, this approach would effectively deny percentage depletion on half of the production sold in 1982. Thus, whenever oil is stored from one year to the next (a not uncommon phenomenon for an independent producer), such oil, the proceeds from the sale of which would have been subject to percentage depletion had such oil been sold when extracted, quite likely will not be subject to percentage depletion when sold in a later year, and an extremely "harsh result obtains" (see dissent at p. 948). It is apparent that examples can be marshalled to show the inequity of any construction of this statute. Thus, once again, I am content to follow the majority's simple, but not simplistic, interpretation of the term "production."

I would like to turn briefly to other problems presented by the construction and application of sections 611 through 614.

It can hardly be denied that the rationale of the majority, when applied to the question of whether percentage depletion on lease bonuses remains available, requires a negative answer to such question. See *Glass v. Commissioner*, 76 T.C. 949 (1981). Though percentage depletion was available to a lessor with respect to lease bonuses received prior to the 1975 change in the law (*Herring v. Commissioner, supra*), under the rationale of the majority here and under our decision this day in *Glass v. Commissioner, supra*, the diminution of the reservoir of hydro-

carbons represented by the bonus payment is now recoverable only through the use of cost depletion.[3] That being the case, it is questionable whether there remains any reasonable need for the "bonus exhaustion rule" embodied in section 1.613–2(c)(5)(ii), Income Tax Regs. See also *Quintana Petroleum Co. v. Commissioner*, 143 F.2d 588 (5th Cir. 1944). The bonus exhaustion rule required that a lessee, in computing his "gross income from the property" (which is the amount to which the applicable percentage is applied in order to determine the allowable percentage depletion), exclude therefrom a proportionate part of any bonus paid with respect to such property on the theory that, because bonuses were characterized as advance royalties, to allow percentage depletion on both the bonus and on all of the production income from a property would result in double depletion on production income in an amount equal to the bonus paid. Inasmuch as bonuses are no longer subject to percentage depletion, the rationale for that rule no longer exists. See L. Bravenec & J. Flagg, "Initial Proposed Section 613A Regulations," 24 Oil & Gas Tax Q. 218, 224 (1975); F. Burke, "Proposed Regulations Under Section 613A—An Analysis and Critical Review," P-H Oil & Gas/Natural Resources (1976).[4] Quaere whether this rationale is also applicable to the unrecouped portion of advance royalties paid. See sec. 1.613–2(c)(5)(iii), Income Tax Regs.; Rev. Rul. 79–386, 1979–2 C.B. 246.

Another nettlesome problem arises when we consider the situation where a bonus, which is not subject to percentage depletion but should conceivably always be subject to cost depletion, is received in the same year as a royalty (or a recouped advance royalty), which royalty is subject to percentage depletion as limited by section 613A. At first blush, one would think that the recipient would just take cost depletion on the bonus (with regard only to the bonus) as outlined in section 1.612–3(a), Income Tax Regs., then calculate both cost and allowable percentage depletion on the royalty received and, pursuant to

---

[3]In a wildcat area, the present treatment of bonuses received may be more advantageous than it would have been prior to 1975. See *Collums v. United States*, 480 F. Supp. 864 (D. Wyo. 1979).

[4]It appears that the Commissioner still clings to the bonus exhaustion rule. See Rev. Rul. 79–73, 1979–1 C.B. 218; IRS National Office Technical Advice Memorandum, written determination No. 8026011 dated Mar. 20, 1980.

sections 1.611–1(a)(1), 1.612–3(d), and 1.613–1, Income Tax Regs., deduct the greater of the two (subject to basis limitations for the deduction of cost depletion—sec. 1.611–2(b)(2), Income Tax Regs.). However, under my understanding of sections 1.611–1(a) and 1.613–1, Income Tax Regs., as they presently exist, a taxpayer may deduct, with respect to each "property" (which is defined under sec. 614(a) as "each separate interest owned by the taxpayer in each mineral deposit in each separate tract or parcel of land"), either cost or percentage depletion in the same taxable year, but not both. Thus, a taxpayer in the above fact situation would be allowed to deduct (subject to sec. 1.611–2(b)(2), Income Tax Regs.) only the greater of (1) an amount equal to the sum of cost depletion calculated with regard to the bonus under the formula set forth in section 1.612–3(a), Income Tax Regs., and cost depletion calculated under the formula set forth in section 1.611–2(a), Income Tax Regs., with regard to the royalty (or recouped advance royalty) received during that taxable year, or (2) an amount equal to the percentage depletion allowable under section 613A with respect only to the royalty (or recouped advance royalty) received during that taxable year. Compelling a choice between these two incomplete alternatives does not seem fair, and were I faced with a case requiring a construction of such regulations, I am not sure I could abide such an inequitable result. The controlling regulations were, of course, issued prior to the enactment of section 613A under the statutory mandate of section 611(a) that "there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion * * * such reasonable allowance in all cases to be made under regulations prescribed by the Secretary." Though such regulations no doubt were reasonable prior to the enactment of section 613A, I question whether they continue to provide a "reasonable allowance for depletion" under the revised legislative scheme for calculating the percentage depletion deduction. I would hope that the Commissioner would promptly propose regulations that would allow a taxpayer to take cost depletion with respect to a bonus received, regardless of whether cost or percentage depletion is higher as to the income from actual production received during the same taxable year.

There are, no doubt, other technical problems in the percentage depletion area caused by the drastic revision made in 1975. The proposed regulations should be examined not only to resolve

the problems I have enumerated above but also to speak to some others which lurk behind the scene. Hopefully, the Commissioner will perform a comprehensive review of the proposed regulations.

FAY, *J.*, dissenting: While the grounds upon which the majority opinion rests its holding are unclear, I nevertheless disagree. In my view, advance payments for oil or gas do in fact represent "production" for purposes of section 613A(c).[1]

Section 613A(c)(1) allows percentage depletion with respect to so much of a taxpayer's "average daily production" as does not exceed his "depletable oil quantity." Section 613A(c)(2)(A) defines "average daily production" as "aggregate production" divided by the number of days in the taxable year. The critical word is "production." Unfortunately, the majority opinion makes no attempt to define "production" but cavalierly assumes there was no "production" in this case.[2] See majority, *supra* at 921. Evidently, the majority requires extraction but provides no enlightenment as to whether "production" means only extraction or whether extraction is merely one required element of "production."[3] While I agree that some tie to extraction is essential for percentage depletion, I see no reason why future extraction as well as past or current extraction cannot suffice. See generally *Herring v. Commissioner*, 293 U.S. 322 (1934). I would interpret "production" to mean the extraction (past, current, or future) properly attributable to a taxpayer's taxable year. The number of barrels properly attributable to a year is easily measured by income. This interpretation follows closely what I perceive to be the intent of Congress without leading to inexplicable, illogical results as different factual cases emerge. Whatever interpretation the majority opinion is giving to "production," that interpretation is simply wrong.

First, the majority opinion could be read as defining "produc-

---

[1] Unless otherwise provided, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.

[2] I realize petitioners stipulated they had no "average daily production" of oil or gas; however, it is obvious they were equating "production" with extraction. Therefore, I would not base any denial of petitioners' percentage depletion deduction on that stipulation.

[3] I use the term "extraction" to mean the physical withdrawal of oil or gas.

tion" as extraction alone. Thus, percentage depletion would be allowable only with respect to extraction occurring during the taxable year. While such a definition might come to mind upon a simplistic first reading of the statute, it becomes absurd after further reflection. Reading section 613A(c) as requiring extraction during the taxable year effectively ignores the mandate found in section 613A(c)(1) that allowable percentage depletion be computed "in accordance with section 613."

Section 613(a) grants a deduction calculated by taking a percentage of the gross income from property. Therefore, in order for section 613A(c) to mesh with section 613(a) both logically and administratively, "production" has to have some relation to gross income. See sec. 1.613–3(a), Income Tax Regs. The illogical result which obtains from interpreting section 613A(c) as requiring extraction in the taxable year is illustrated by the following example. Assume these facts: In December 1975, *B*, a cash basis, calendar year taxpayer, extracts 10,000 barrels of oil for which he is paid in 1976.[4] *B* neither extracts nor sells any more oil in 1975 or in 1976. If "production" meant *only* extraction, *B* would have "production" in 1975 but no gross income from the property in that year to serve as a basis for calculating percentage depletion under section 613(a). In 1976, *B* would have gross income from the property, but it would not be with respect to any 1976 "production" since *B* did not extract any oil in 1976. In effect, *B* would be denied his percentage depletion allowance with respect to all 10,000 barrels. That is obviously not what Congress intended; therefore, I am very hesitant to attribute such reasoning to the majority.

Perhaps the majority opinion would allow our taxpayer, *B*, percentage depletion in 1976 since it is unclear whether it requires extraction in the same year as a percentage depletion deduction is claimed.[5] Respondent, in his proposed regulations under section 613A(c), takes the position that "production" occurs in the year income is received if and only if the income is

---

[4] I shall be using examples throughout this dissent. For convenience, I am assuming a "depletable oil quantity" of 1,000 barrels. See sec. 613A(c)(3)(B). Thus a taxpayer could have 365,000 barrels of "production" in a calendar year of 365 days without having his "average daily production" exceed his "depletable oil quantity."

[5] The majority opinion, *supra* at 921, seems to imply that only future extraction is tainted when it refers to an "exempt quantity of production." However, the matter is left unresolved.

backed by past or year-of-income extraction. See sec. 1.613A–3(a)(4), example (*4*), Proposed Regs., 42 Fed. Reg. 24281 (May 13, 1977).[6] In my example above, *B* would have 10,000 barrels of "production" in 1976 because income from 10,000 barrels was recognized in 1976 under *B*'s method of accounting and because there had been at least 10,000 barrels extracted before or in the same year as the income. Thus, the proposed regulations reach a reasonable result when the income from oil or gas is received with or following extraction. But if income precedes extraction, that is, if advance payment is received, respondent contends there is no "production." That contention produces clearly untenable results.

Consider the following example: During 1975, *C*, a cash basis, calendar year taxpayer, extracts 2,000 barrels and receives income for 3,000 barrels. In 1976, *C* extracts 5,000 barrels and receives income for 4,000 barrels. Those facts are charted below:

|                        | 1975  | 1976  |
|------------------------|-------|-------|
| Extraction in barrels  | 2,000 | 5,000 |
| Income in barrels      | 3,000 | 4,000 |

Under the regulations' approach (and, perhaps, the majority's), *C* would have 2,000 barrels of "production" in 1975 because, while 3,000 barrels gave rise to income, only 2,000 of those barrels were backed by extraction. In 1976, *C* would have 4,000 barrels of "production" because, while 5,000 barrels were extracted only 4,000 barrels gave rise to income. Even though *C* did not exceed his depletable oil quantity in either year, he is deprived of percentage depletion with respect to the 1,000 barrels which gave rise to income in 1975 but were extracted in 1976. Respondent gets the best of both worlds, and a harsh result

---

[6] It is unclear under the proposed regulations whether, for purposes of determining if the depletable oil quantity has been exceeded, one would look to the income or to the required backup extraction. Thus if 300,000 barrels were extracted each year for 4 years, and all 1,200,000 barrels were sold in year 5, average daily production would exceed the depletable oil quantity in year 5 if reference were only made to income. See note 4 *supra*.

Arguably, income would be required to be backed up by extraction, but whether "production" is exempt would be determined by reference to the year of extraction and income would only determine the timing of the percentage depletion deduction. If 300,000 barrels were extracted each year for 4 years, all 1,200,000 barrels would be exempt "production" since the depletable oil quantity measured by extraction was never exceeded in any year. The entire year–5, income would be subject to a full allowance without reference to sec. 613A(c)(7)(A). Such an analysis would require a detailed and perhaps impossible tracing of extraction necessary to determine what extraction was being sold.

obtains. Since respondent recognizes that "production" cannot mean just extraction *this* year but must necessarily somehow relate to gross income, I am at a loss to understand his rationale for distinguishing between income received before extraction and income received after or with extraction. In other words, if "production" is based on income when extraction has occurred in the past, it is capricious to say that "production" is not based on income solely because extraction will occur only in the future.[7]

Furthermore, not only does requiring income to be backed by extraction deny percentage depletion with respect to *any* oil paid for before it is extracted, respondent's interpretation creates additional accounting requirements. Extraction not matched by current sales must be noted and carried forward until the income therefrom is recognized for tax purposes. There is absolutely no statutory authority for such a requirement, which causes "production" to take on an excessively complicated and burdensome meaning. Therefore, I would reject respondent's income-backed-by-extraction interpretation of "production."[8]

There is a third possible meaning which the majority might be attaching to "production," that is that "production" means a combination of extraction and income regardless of which occurs first. Under this approach, both elements are required with "production" for section 613A(c) purposes occurring when the later of extraction or income occurs.

Assume the following facts: In 1975, *D*, a calendar year, cash basis taxpayer extracts 1,000 barrels and receives income for 5,000 barrels. In 1976, *D* extracts 2,000 barrels and receives income for 1,000 barrels. In 1977, *D* extracts 5,000 barrels and receives income for 1,000 barrels. Those facts are charted below:

---

[7] In essence, respondent is using sec. 613A(c) to revert to his position which the U.S. Supreme Court rejected in *Herring v. Commissioner*, 293 U.S. 322 (1934).

[8] Respondent's interpretation is found in proposed regulations which "carry no more weight than a position advanced on brief by the respondent." *F. W. Woolworth Co. v. Commissioner*, 54 T.C. 1233, 1265–1266 (1970). The Court was not presented with final regulations which "must be sustained unless unreasonable and plainly inconsistent with the statute." See *Bingler v. Johnson*, 394 U.S. 741, 750 (1969).

|  | *1975* | *1976* | *1977* |
|---|---|---|---|
| Extraction in barrels | 1,000 | 2,000 | 5,000 |
| Income in barrels | 5,000 | 1,000 | 1,000 |

Under this third approach, which may or may not be that of the majority, *D* would have 1,000 barrels of "production" in 1975 since the required element of extraction had only occurred with respect to 1,000 barrels. In 1976, *D* would have 2,000 barrels of "production" because 2,000 more barrels had been both extracted and paid for by 1976. In 1977, *D* would have 4,000 barrels of "production" because, while 5,000 barrels were extracted, only 4,000 barrels worth of unaccounted for income would have been received. Thus, 1,000 barrels of extraction would be carried forward until it could be matched with its income.

While the above interpretation might achieve some interplay between sections 613A(c) and 613(a) without wholesale denial of percentage depletion with respect to advance payments, it would effectively rewrite section 613(a). As I have previously noted, section 613(a) grants a deduction based on a percentage of "gross income." Section 1.613–3(a), Income Tax Regs., defines "gross income" as "the amount for which the taxpayer sells the oil or gas." Thus, section 613(a) always has been applied as granting a deduction in the same year as the taxpayer recognizes the gross income under his method of accounting. See *Herring v. Commissioner*, 293 U.S. 322 (1934). See, e.g., *United States v. Skelly Oil Co.*, 394 U.S. 678 (1969). See also sec. 1.611–2(a)(2), Income Tax Regs. There is no support for interpreting section 613(a) differently when section 613A(c) is involved than when section 613A(c) is not involved. Section 613A(c) does not rewrite section 613(a). In fact, section 613A(c)(1) directs computation "in accordance with section 613."

If, for section 613A(c) purposes, a percentage depletion deduction could be taken only when the later of extraction or income occurred, not only would long established interpretations of section 613(a) be overruled, but a serious mismatching of income and deductions would obtain. For example, if our taxpayer, *D*, had income from 1,200,000 barrels in year 1 prior to any extraction, he would have a large amount of income in that year but no percentage depletion deduction. If, in years 2 through 5, *D* actually extracted 300,000 barrels each year he would be entitled to a deduction based on the prior income from

those barrels even though he had no gross income in the years of extraction.[9] I cannot help but wonder whether such a result would represent a failure clearly to reflect income under section 446(b).[10] For the above reasons, I would reject any later-of-income-or-extraction interpretation of "production."

In summary, whatever interpretation the majority opinion is silently giving "production" in order to deny percentage depletion with respect to advance payments, I believe its position is unsupportable.[11] I see only one possible interpretation of "production."

In my view "production" means the extraction (past, current, or future) properly attributable to a taxpayer's taxable year as measured by the income received in that year. In other words, the number of barrels giving rise to income in a year is the number of barrels of "production" that year. Thus, if a taxpayer had the following extraction and barrels giving rise to income:

|  | 1975 | 1976 | 1977 |
|---|---|---|---|
| Extraction in barrels | | 2,000 | 6,000 |
| Income in barrels | 5,000 | 1,000 | 1,000 |

his "production" under section 613A(c) would be 5,000 barrels in 1975, 1,000 barrels in 1976, and 1,000 barrels in 1977 since those

[9]Presumably, even though D received income with respect to all 1,200,000 barrels of his oil in one year he would get a percentage deduction with respect to all of it since he spread out extraction. See note 6 *supra*.

[10]Furthermore, if income were recognized in one year and percentage depletion deductions calculated on that income were taken in other years, the amount of deduction limits based on taxable income found in secs. 613(a) and 613A(d)(1) would be nonsensical. See also sec. 613A(c)(7)(C).

[11]The majority opinion repeatedly notes that there has been no extraction under the oil and gas leases herein. The question which immediately leaps to mind is what if one barrel of oil had been extracted? Respondent's reply is clear—no percentage depletion deduction because that barrel of oil cannot be specifically traced to any of the advance royalties. See sec. 1.613A–7(f), Proposed Regs., 42 Fed. Reg. 24287 (May 13, 1977); Rev. Rul. 81–44, 1981 I.R.B. 6. The majority opinion may well be adopting respondent's position; I cannot tell. On the other hand the majority opinion may contemplate allowing a percentage depletion deduction calculated on the part of the advance payment which it feels is attributable to the extraction. How it would achieve such attribution without ultimately allowing all income received to represent barrels is beyond me.

Moreover, if advance royalties are recoupable against earned royalties, respondent will allow percentage depletion with respect to the part of the advance payment which can be tied by recoupment to extraction in the year the advance payment is received. Nevertheless, that portion of the advance payment recouped through later years' extraction would not be subject to percentage depletion. See sec. 1.613A–3(a)(4), example (4), Proposed Regs., 42 Fed. Reg. 24281 (May 13, 1977).

are the numbers of barrels represented by income in each of those years.

Placing extraction in a year by reference to income interprets the term "production" without reading a myriad of calculations and carryovers into the statute. Not only is it a straightforward interpretation, it comports with the basic rule of natural resources taxation that depletion is calculated on income rather than on the physical withdrawal of the mineral from its resting place. See sec. 1.611–2(a)(2), Income Tax Regs. See generally *Shamrock Oil & Gas Corp.*, 35 T.C. 979 (1961), affd. 346 F.2d 377 (5th Cir.), cert. denied 382 U.S. 892 (1965).

Furthermore, my interpretation fulfills what I perceive to be the intent of Congress. While the legislative history of section 613A(c) is limited, see majority, *supra* at note 20, the one salient fact that emerges from a perusal of the floor debates is that Congress intended to preserve the percentage depletion deduction for certain taxpayers, small independent producers and royalty owners, while severely curtailing its benefits to major oil producers.[12] Most importantly, there is no evidence of any intent to alter the manner in which percentage depletion is calculated or to overrule prior law concerning advance payments.[13]

Under pre-section 613A law, the treatment of advance royalties was clear. When the lessor-royalty owner took the advance payment into income, it was gross income from the property and subject to percentage depletion regardless of whether or not any oil and gas extraction had taken place. *Anderson v. Helvering*, 310 U.S. 404, 409 (1940); *Herring v. Commissioner*, 293 U.S. 322 (1934). As far as a lessor-royalty owner is concerned, advance

---

[12]If a taxpayer's average daily production exceeds his depletable oil quantity, he is still entitled to percentage depletion, but its benefits are greatly reduced. See sec. 613A(c)(7)(A).

[13]Conf. Rept. 94–120, (1975), 1975–1 C.B. 624, 630, states that: "The Senate amendment *retains* percentage depletion at 22 percent on a permanent basis for the small independent producer * * * [Emphasis added.]"

The above-quoted language indicates retention rather than abrogation of basic percentage depletion rules. However, the majority opinion disclaims that language by characterizing it as explaining an unenacted "Senate version of the bill." Majority, *supra* at 923. In fact, the legislative history reveals that the enacted Conference substitute "follows the Senate amendment in providing a small producer *exemption from the repeal of percentage depletion* for oil and gas." Conf. Rept. 94–120, *supra* at 630. (Emphasis added.) The enacted bill was, in effect, the Senate version—the only differences being phase downs of percentages and barrel amounts and elimination of a plowback requirement.

royalties are received with respect to extraction that will occur in the future rather than occurring now or in the past.[14] To restrict "production" in section 613A(c) to current or past extraction while excluding future extraction "in effect overrules prior case law without a clear statutory mandate." See Linden, "Oil and Gas Depletion Regulations: Complexity Compounded," 24 Oil & Gas Tax Q. 351, 380 (1976). See also Bravenec, "Continued Availability of Percentage Depletion On Oil and Gas," 23 Oil & Gas Tax Q. 204 (1975). On the other hand, interpreting "production" as extraction attributable to a year by reference to income allows almost 50 years of clear law to stand.

The majority opinion states that considering future extraction "would mean that 'production' as used in section 613A(c) should be read to mean 'sales of future production.'" Majority opinion, *supra* at 925. I strongly disagree. I am not maintaining that Congress accidentally wrote "production" rather than "sales." I do maintain that Congress intended "production during the taxable year" to include all extraction properly attributable to that year whether it be past, current, or future extraction. Even respondent recognizes that "production" must be interpreted with reference to income.

Furthermore, it is a simple matter to measure "production" in terms of income. "Production" is the number of barrels paid for whether or not the extraction of those barrels has actually occurred. Given the fluctuating prices of oil and gas, Congress drafted the section 613A(c) limitations on percentage depletion couched in terms of "production" rather than some yearly income amount to avoid the need for constant amendments. However, by referring to section 613(a), Congress made it clear that "production" is inexorably tied to income. Respondent recognizes the tie between income and "production" when the receipt of income is accompanied by current or past extraction,

---

[14]The treatment of the lessee-payor with respect to depletion and advance payments need not be consistent with the treatment of the lessor-payee. See discussion in *Shamrock Oil & Gas Corp. v. Commissioner*, 35 T.C. 979 (1961), affd. 346 F.2d 377 (5th Cir. 1965), cert. denied 382 U.S. 892 (1965). See also E. Price & M. Cassell, "Revenue Ruling 79–23 Ignores Tax Reduction Act of 1975," 28 Oil & Gas Tax Q. 76 (1979). Nevertheless, it seems that the proposed regulation's denial of percentage depletion on advance payments is inconsistent with the "bonus exhaustion" rule of sec. 1.613–2(c)(5)(ii), Income Tax Regs., which is applicable to lessees. See Bravenec & Flag, "Initial Proposed Section 613A Regulations," 24 Oil & Gas Tax Q. 218, 224 (1975).

but refuses to acknowledge that tie when income is received prior to extraction.[15] I simply do not see how he can justify such a distinction.

Based on the foregoing, I would hold that petitioners are entitled to a percentage depletion deduction calculated on the full $7,600 in advance royalties received by them in 1975. Those advance royalties were paid with respect to oil and gas extraction, albeit future extraction. See *Anderson v. Helvering,* *supra.* Since the taxable year involved herein is 1975, petitioners' "depletable oil quantity" was 2,000 barrels. See sec. 613A(c)(3). Thus, petitioners were allowed 720,000 barrels of "production" in 1975 before their "average daily production" would exceed their "depletable oil quantity."[16] By no stretch of the imagination would $7,600 represent anything near 720,000 barrels in 1975. Accordingly, I would allow petitioners their claimed percentage depletion deduction.[17]

---

[15]The majority attempts to disclaim any income-based interpretation of "production" as creating "numerous practical problems" (majority, *supra* at 926), due to differences between depletable oil quantities and depletable natural gas quantities. A careful reading of sec. 613A(c) belies such worries. Sec. 613A(c)(3) sets a depletable oil quantity (e.g., 2,000 barrels) while sec. 613A(c)(4) in effect converts gas to barrels (6,000 cubic feet per barrel) which uses up part of the depletable oil quantity. Secondary or tertiary production also reduces the depletable oil quantity. In reality, an *overall* limit of barrels (e.g., 2,000) is being imposed regardless of whether the barrels are oil or gas. The statute merely ensures that a taxpayer does not get a full barrel allowance of *each.*

The only arguable problem is that secondary or tertiary barrels are depleted at 22 percent until 1983 while other barrels fall to 18 percent by 1983. See secs. 613A(c)(6)(A)(ii) and 613A(c)(5). I do not envisage the problem being insurmountable by the burden of proof. At the time of payment, it will probably be known whether secondary or tertiary "production" is involved. The same is true concerning gas "produced from geopressurred brine." Sec. 613A(b)(3)(C). Additionally, I note that current sec. 613A(b)(2) was nonexistent in 1975 and should not be considered in a case concerning petitioners' 1975 taxable year.

[16]As shown on their Federal income tax return for 1975, petitioners were calendar year taxpayers in 1975. Calendar year 1975 was made up of 365 days. Thus, if 720,000 barrels were petitioners' "aggregate production" in 1975, their "average daily production" would be 2,000 barrels/day. See sec. 613A(c)(2)(A).

[17]Of course, if there is never any extraction under the leases involved in this case, petitioners would be required to recapture the percentage depletion deduction. See sec. 1.612–3(b)(2), Income Tax Regs. See also majority, *supra* at note 24.