MONSANTO COMPANY, Appellant,

v.

Harry F. TYRRELL et al., Appellees.

No. 1397.

Court of Civil Appeals of Texas, Houston (14th Dist.).

May 12, 1976.

Rehearing Denied June 2, 1976.

Stan McLelland, Perry Barber, Baker & Botts, Houston, for appellant.

Clifford G. Campbell, R. F. Wheless, Jr., Houston, for appellees.

CIRE, Justice.

This case involves the determination of the effect of an advance payment for gas production. The action was initiated by appellant Monsanto Company (lessee) for a declaratory judgment to construe an oil and gas lease and gas purchase contract. A counterclaim was filed by the Tyrrells (lessors) both for a declaratory and a money judgment.

Monsanto and the Tyrrells have each entered into separate gas purchase contracts with Northern Natural Gas Company, the sole purchaser of gas from the leased property. Northern made an advance payment to Monsanto for gas to be delivered in the future under the gas purchase agreement between those two parties. The only question on this appeal is whether any portion of the advance payment can be considered as "recovery from production" as of the date the payment was made.

Paragraph 12E of the lease provides:

At such time as Lessee has recovered from 70% of total production, a sum net after severance, pipeline and production taxes, equal to (a) 100% of all sums expended by it in drilling wells (whether producers, dry holes or junked holes) upon the above described land and completing and equipping the same into the tanks as to oil wells and into the pipeline as to gas wells, and in plugging and abandoning dry holes and abandoned wells, plus (b) 100% of the total cost of operating said wells until the date of recovery of the sums described in (a), the royalties to be paid by Lessee under paragraph 3 as amended by paragraph D above, shall ipso facto increase from the percentage thirty per cent (30%) to the percentage fifty per cent (50%).

As permitted in the lease, appellant created a pooled unit, of which the Tyrrells' interest constitutes about 45%. Of this 45% of the pooled unit, the Tyrrells are entitled to an initial royalty of 30%, which royalty is to increase to 50% when Monsanto has recovered its drilling and completion costs, plus its operating costs until the date of payout.

On June 18, 1971, before the Tyrrell well was completed, Monsanto entered into a gas purchase contract with Northern under which Monsanto agreed to sell to Northern all of Monsanto's gas produced from the pooled unit. On March 24, 1972, the Tyrrells entered into a separate purchase agreement with Northern. On January 31, 1972, after the Tyrrell well was completed, Northern made an advance payment to Monsanto of $1,272,275 as partial payment for the gas committed to Northern out of Monsanto's share of the production. The gas purchase agreement provided that Northern was to recoup this advance payment by

deducting from payments otherwise due [Monsanto] Seller hereunder Thirty Percent (30%) of the amount determined by multiplying the volumes of gas produced from Seller's interest in all Gas Production Units hereunder by the price per Mcf which is effective at the time such gas is received by Northern. . . .

The trial court found that by the term "recovery from production" the parties to the lease intended that the Tyrrells' royalty would shift to 50% when Monsanto had recovered its well costs from "the *marketing* of the production [gas]" from the Tyrrell well. On the basis of this interpretation of the lease, the court found that $374,-403.00 of the advance payment constituted recovery of well costs, to be credited as such at the time the payment was made rather than at the time the gas was actually produced. Therefore, the court found that by applying this $374,403.00 as recovery of costs at the time the payment was made, the Tyrrells' royalty shifted to 50% in November, 1972, and that from November, 1972 until February, 1973 Monsanto had delivered to Northern an amount of gas belonging to the Tyrrells for Monsanto's own account. The court found the value of that gas to be $60,406.15 and rendered judgment for the Tyrrells for that amount.

Monsanto contends that at the time the advance payment was received it could not have constituted a "recovery from production", to be applied under the lease as recovery of the well costs, because at that time there had been no production from the well. This contention is based on the proposition that under Texas oil and gas law the clear, well-established, and unambiguous meaning of the term "production" is "actual production" or the actual physical extraction of the mineral from the soil. Texas case law has established this as the correct interpretation of the term "production" when it appears in a royalty deed or in the habendum clause of a mineral lease. *Gulf Oil Corporation v. Reid*, 161 Tex. 51, 337 S.W.2d 267 (1960); *Rogers v. Osborn*, 152 Tex. 540, 261 S.W.2d 311 (1953); *Campbell v. Dreier*, 382 S.W.2d 179 (Tex.Civ.App.-San Antonio 1960, writ ref'd n. r. e.); *Sellers v. Breidenbach*, 300 S.W.2d 178 (Tex.Civ.App.-San Antonio 1957, writ ref'd n. r. e.).

In construing the terms used in a written instrument the court is to give to such terms their usual and accepted meaning, unless it is clearly shown the parties intended a different meaning. *Pan American Insurance Co. v. Cooper Butane Co.*, 157 Tex. 102, 300 S.W.2d 651, 654 (1957). Moreover, if the language used in a written contract is such as conveys a definite legal meaning, such language is not ambiguous and is not subject to further judicial interpretation. *Wynnewood State Bank v. Embrey*, 451 S.W.2d 930 (Tex.Civ.App.-Dallas 1970, writ ref'd n. r. e.). We think the term "production" as used in this lease has a definite legal meaning, namely, the actual physical severance of the mineral from the soil. No ambiguity of meaning appears on the face of the lease; therefore, it was error for the court to substitute the term "marketing from production" for the plain term "production" used in the instrument.

It is also apparent from the language of the lease that the parties intended that the lessors would bear 20% of the well costs from their share of the production from the Tyrrell lease. The result of the court's substitution of terms would be to place almost the entire financial burden of drilling and equipping the Tyrrell well onto Monsanto, a result which was clearly not intended by the parties.

The judgment of the trial court is reversed. Judgment is here rendered declaring that the $1,272,275 advance payment was to be accounted for by Monsanto as recovery of its well expenses only as the gas purchased through that payment was actually produced from the lease.

Reversed and rendered.