JAMES DAVID GLASS AND WILLIE GLASS, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5169–79.    Filed June 8, 1981.

*Guilford L. Jones III*, for the petitioners.
*John W. Dierker* and *Thomas G. Potts*, for the respondent.

OPINION

FEATHERSTON, *Judge*: Respondent determined a deficiency in the amount of $15,472.20 in petitioners' Federal income tax for 1975. The only issue for decision is whether petitioners are entitled to deduct percentage depletion under sections 611[1] and 613A with respect to certain oil and gas lease bonus payments which they received in 1975.

All of the facts have been stipulated.

Petitioners, who are husband and wife, filed a joint Federal income tax return for 1975 with the Internal Revenue Service Center, Austin, Tex. At the time the petition herein was filed, they were legal residents of Sterling City, Tex.

During 1975, petitioners executed certain oil and gas leases covering mineral interests in properties owned by one or both of them in fee simple. Upon the execution of each lease, petitioners received a bonus as consideration primarily for the right to explore for oil and gas on the leased properties and the right to produce, market, and retain the profits from such oil and gas, subject to the payment of a royalty to petitioners. The bonuses were received without reference to the actual production of oil or gas, and any royalties that might later accrue to petitioners could not be reduced because the bonuses had been received.

There was no production of oil or gas during 1975 from one of

---

[1]All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

the properties covered by a lease executed in consideration of a bonus of $19,200. On the other properties covered by the leases, one or more wells were drilled and completed as producing oil or gas wells during 1975. With respect to these properties, petitioners received bonuses in the total amount of $120,740. They also received $24,811 in royalties on the production from these properties in 1975.

On their 1975 Federal income tax return, petitioners claimed deductions for percentage depletion with respect to the royalties they received on the production of oil and gas during that year and with respect to the bonuses they received upon the execution of the leases from which production was obtained. No deduction for depletion was claimed with respect to the bonus they received for the lease from which there was no production of oil or gas during 1975. In their petition, however, petitioners claimed an overpayment of taxes in the amount of $2,407 on the ground that they are entitled to a percentage depletion deduction in connection with the bonus received for the nonproducing lease.[2]

In the statutory notice of deficiency, respondent allowed the deduction claimed by petitioners for percentage depletion with respect to the royalties received in 1975, but he disallowed in full the deduction claimed by them for percentage depletion on the lease bonuses.

Section 611(a) provides in part that "In the case of * * * oil and gas wells, [and] other natural deposits, * * * there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion." In computing the deduction, a taxpayer may be entitled to use either of two different methods prescribed in the Internal Revenue Code—cost depletion[3] or percentage depletion.[4] Where the taxpayer is entitled to use either method, the method allowing the greater deduction for

---

[2] This Court has jurisdiction under sec. 6512(b) to determine any overpayment that might have resulted from petitioners' failure to claim a depletion deduction on their 1975 income tax return with respect to the bonus received for the nonproducing lease. The same taxable year as the one covered by the notice of deficiency is involved (sec. 6512(b)(1)), and a timely refund claim could have been filed at the time the notice of deficiency was mailed. See sec. 6512(b)(2)(B).

[3] See sec. 612; sec. 1.611–2(a), Income Tax Regs.

[4] See secs. 613 and 613A.

any given tax year must be used to compute depletion for that year. Secs. 1.611–1(a), 1.613–1, Income Tax Regs.

Prior to 1975, it was well-established law that the recipient of a lease bonus under an oil and gas lease could compute depletion on the basis of either the cost or the percentage method. See, e.g., *Herring v. Commissioner*, 293 U.S. 322 (1934). Effective for taxable years beginning after December 31, 1974, however, sections 613(d)[5] and 613A (added by the Tax Reduction Act of 1975, Pub. L. 94–12, 89 Stat. 26 (Mar. 29, 1975)) deny the use of percentage depletion in the case of oil and gas wells, with certain limited exceptions.[6] In this respect, section 613A(a) provides as follows:

SEC. 613A. LIMITATIONS ON PERCENTAGE DEPLETION IN CASE OF OIL AND GAS WELLS.

(a) GENERAL RULE.—Except as otherwise provided in this section, the allowance for depletion under section 611 with respect to any oil or gas well shall be computed without regard to section 613 [i.e., without regard to percentage depletion.]

In contending that all of the oil and gas lease bonuses they received in 1975 are eligible for percentage depletion, petitioners appear to rely primarily upon section 613A(c), which sets forth a carefully circumscribed exception to the general rule of section 613A(a) for independent producers and royalty owners.[7] Emphasizing the express language of section 613A(c), allowing percentage depletion only with respect to a limited quantity of a taxpayer's "average daily production" of oil or gas, respondent maintains that percentage depletion is not allowable on a lease bonus because it is not received with respect to the actual production of oil or gas. On that ground, respondent asks us to hold that petitioners are not entitled to percentage depletion on any of the bonuses received in 1975.

---

[5]Sec. 613(d) provides as follows:

(d) DENIAL OF PERCENTAGE DEPLETION IN CASE OF OIL AND GAS WELLS.—Except as provided in Section 613A, in the case of any oil or gas well, the allowance for depletion shall be computed without reference to this section.

[6]See sec. 613A(b) and (c).

[7]The class of persons eligible for the exemption for "independent producers and royalty owners" generally includes taxpayers who are neither "retailers" nor "refiners" within the meaning of sec. 613A(d). There is no question that petitioners fall within the class of taxpayers that qualify for the exemption; rather, the question is whether the bonuses received by petitioners fall within the exemption.

Consistent with our conclusion in *Engle v. Commissioner,* 76 T.C. 915 (1981), dealing with advance royalties, we hold that petitioners are not entitled to deduct percentage depletion with respect to their lease bonuses. Section 613A(c) allows percentage depletion deductions only for payments received with respect to actual oil or gas production. Because petitioners' lease bonuses were not received with respect to actual production during the taxable year, they do not qualify for percentage depletion. Under current law, lease bonuses are eligible only for cost depletion.[8]

Section 613A(c)[9] provides, in part, that an allowance for

---

[8]This conclusion is consistent with the views of text writers. See F. Burke & R. Bowhay, Income Taxation of Natural Resources, sec. 8.32 (1980), which states: "since the percentage depletion allowed by the independent producer and royalty owner exemption requires actual production during the taxable year, * * * lease bonuses no longer qualify for percentage depletion in the year of receipt. [Fn. ref. omitted.]"

Miller's Oil & Gas Federal Income Taxation, sec. 31-3, p. 580 (J. Houghton ed. 1980), states: "Since percentage depletion is allowed only with respect to production [under sec. 613A(c)], no percentage depletion is allowable with respect to lease bonuses."

[9]Sec. 613A(c) provides in part as follows:

(c) EXEMPTION FOR INDEPENDENT PRODUCERS AND ROYALTY OWNERS.—

    (1) IN GENERAL.—Except as provided in subsection (d), the allowance for depletion under section 611 shall be computed in accordance with section 613 with respect to—

        (A) so much of the taxpayer's average daily production of domestic crude oil as does not exceed the taxpayer's depletable oil quantity; and

        (B) so much of the taxpayer's average daily production of domestic natural gas as does not exceed the taxpayer's depletable natural gas quantity;

and the applicable percentage (determined in accordance with the table contained in paragraph (5)) shall be deemed to be specified in subsection (b) of section 613 for purposes of subsection (a) of that section.

    (2) AVERAGE DAILY PRODUCTION.—For purposes of paragraph (1)—

        (A) the taxpayer's average daily production of domestic crude oil or natural gas for any taxable year, shall be determined by dividing his aggregate production of domestic crude oil or natural gas, as the case may be, during the taxable year by the number of days in such taxable year, and

        (B) in the case of a taxpayer holding a partial interest in the production from any property (including an interest held in a partnership) such taxpayer's production shall be considered to be that amount of such production determined by multiplying the total production of such property by the taxpayer's percentage participation in the revenues from such property.

In applying this paragraph, there shall not be taken into account any production of crude oil or natural gas resulting from secondary or tertiary processes (as defined in regulations prescribed by the Secretary or his delegate).

    (3) DEPLETABLE OIL QUANTITY.—

        (A) IN GENERAL.—For purposes of paragraph (1), the taxpayer's depletable oil quantity shall be equal to—

           (i) the tentative quantity determined under the table contained in subparagraph (B), reduced (but not below zero) by

           (ii) the taxpayer's average daily secondary or tertiary production for the taxable year.

        (B) PHASE-OUT TABLE.—For purposes of subparagraph (A)—

percentage depletion under sections 611 and 613 shall be computed "with respect to * * * so much of the taxpayer's average daily production of domestic crude oil [and natural gas] as does not exceed the taxpayer's depletable oil [and natural gas] quantity." The taxpayer's "average daily production" of oil or gas is to be determined by dividing his aggregate production of oil or gas "during the taxable year" by the number of days in the taxable year. The depletable oil quantity—which the average daily production subject to percentage depletion may not exceed—is computed by reference to a prescribed number of "barrels" of "production during the calendar year" reduced by the taxpayer's average daily secondary or tertiary production "for the taxable year."[10] The depletable natural gas quantity is

| In the case of production during the calendar year: | The tentative quantity in barrels is: |
|---|---|
| 1975 | 2,000 |
| 1976 | 1,800 |
| 1977 | 1,600 |
| 1978 | 1,400 |
| 1979 | 1,200 |
| 1980 and thereafter | 1,000 |

(4) DAILY DEPLETABLE NATURAL GAS QUANTITY.—For purposes of paragraph (1), the depletable natural gas quantity of any taxpayer for any taxable year shall be equal to 6,000 cubic feet multiplied by the number of barrels of the taxpayer's depletable oil quantity to which the taxpayer elects to have this paragraph apply. The taxpayer's depletable oil quantity for any calendar year shall be reduced by the number of barrels with respect to which an election under this paragraph applies. Such election shall be made at such time and in such manner as the Secretary or his delegate shall by regulations prescribe.

(5) APPLICABLE PERCENTAGE.—For purposes of paragraph (1)—

| In the case of production during the calendar year: | The applicable percentage is: |
|---|---|
| 1975 | 22 |
| 1976 | 22 |
| 1977 | 22 |
| 1978 | 22 |
| 1979 | 22 |
| 1980 | 22 |
| 1981 | 20 |
| 1982 | 18 |
| 1983 | 16 |
| 1984 and thereafter | 15 |

[10]Under sec. 613A(c)(2), a taxpayer's average daily production is determined with reference to his aggregate production during the "taxable year." However, the phase-out table in sec. 613A(c)(3) prescribing the tentative number of barrels in the taxpayer's depletable oil quantity, as well as the table in sec. 613A(c)(5) specifying the percentage to be used in

defined to equal 6,000 "cubic feet"[11] of gas multiplied by the number of barrels of the taxpayer's depletable oil quantity that he elects to take into account for this purpose.

In attempting to apply section 613A(c) in accordance with the congressional intent underlying its enactment, we are not aided by any helpful legislative history. As indicated above, the section was added to the Internal Revenue Code by the Tax Reduction Act of 1975. As originally introduced, the bill leading to the act did not affect the percentage depletion allowance. A floor amendment was made in the House of Representatives that would have generally repealed the percentage depletion provisions for oil and gas. 121 Cong. Rec. 4651–4652 (1975). When the bill reached the Senate floor, the Senate added an amendment to provide a limited exemption from the repeal for independent producers and royalty owners. 121 Cong. Rec. 7813 (1975). The Senate amendment, altered to provide an even more limited exemption, became section 613A(c). The Conference report provides no guidance for the application of the statutory language in the circumstances here presented. See Conf. Rept. 94–120, 94th Cong., 1st Sess. (1975), 1975–1 C.B. 624, 629–630.

We are thus left only with the language employed by Congress in the Tax Reduction Act of 1975 as a guide to the congressional purpose in enacting the provisions concerning percentage depletion for oil and gas. The words by which "the legislature undertook to give expression to its wishes" are, however, usually the most "persuasive evidence" of the purpose and meaning of a statute. *United States v. Amer. Trucking Ass'ns.*, 310 U.S. 534, 543 (1940); *Gutierrez v. Commissioner*, 53 T.C. 394, 400 (1969), affd. per order (D.C. Cir., Dec. 9, 1971). Unless the language of the statute is plainly at variance with some clearly defined legislative policy, we cannot look beyond

---

computing percentage depletion, is keyed to the "calendar year." Thus, if a taxpayer is on a fiscal year, "each portion of such taxable year which occurs during a single calendar year shall be treated as if it were a short taxable year." Sec. 613A(c)(10).

Separate provisions are made for the allowance of percentage depletion on secondary or tertiary production of domestic crude oil and natural gas. See sec. 613A(c)(6).

[11]In H. Williams & C. Meyers, Manual of Oil and Gas Terms 565 (1976), the term "cubic feet" is defined as follows:

"The volume of gas contained in one cubic foot of space at a standard pressure base of 14.65 pounds per square inch absolute and at a standard temperature base of 60 degrees Fahrenheit. Whenever the conditions of pressure and temperature differ from the above standard, conversion of the volume from these conditions to the standard conditions is made in accordance with the Ideal Gas Laws, corrected for deviation."

the normal meaning of the words chosen by Congress. *Busse v. Commissioner*, 479 F.2d 1147, 1151–1153 (7th Cir. 1973), affg. 58 T.C. 389 (1972). We must examine petitioners' arguments in the light of these principles.

As we read section 613A(c), it does not permit percentage depletion with respect to an oil and gas lease bonus, and we find no legislative policy supporting petitioners' claims. Percentage depletion is allowable, in the words of the section, with respect to "so much of the taxpayer's average daily production" as does not exceed a specified depletable quantity. Under section 613A(c)(3), oil production is measured in "barrels," defined to mean "42 United States gallons" (sec. 613A(e)(4)), and under section 613A(c)(4), natural gas production is measured in terms of "cubic feet." In the oil and gas industry, "The word 'production' means marketable oil or gas." *Rogers v. Osborn*, 152 Tex. 540, 261 S.W.2d 311, 312 (1953). See, e.g., *Garcia v. King*, 139 Tex. 578, 164 S.W.2d 509 (1942); *Monsanto Co. v. Tyrrell*, 537 S.W.2d 135, 137 (Tex. Ct. App. 1976) ("production" has "a definite legal meaning, namely, the actual physical severance of the mineral from the soil"). See generally H. Williams & C. Meyers, Manual of Oil and Gas Terms 454–455 (1976). Thus, we think it clear that the section 613A(c) exception to the general denial of percentage depletion in the case of oil and gas wells applies only with respect to the actual production of oil or gas.

Lease bonuses, such as those received by petitioners, are not paid "with respect to" the production of oil or gas as that term is used in section 613A(c).[12] As explained in Miller's Oil & Gas Federal Income Taxation, sec. 18–1, p. 290 (1980):

> "Bonus" is the term applied to money received by the lessor upon execution of an oil and gas lease. As a practical matter, insofar as the lessee is concerned, the bonus pays for the right to enter upon the leased premises and explore for oil and gas commonly for a year from the date of the lease. [Fn. ref. omitted.]

In *Burnet v. Harmel*, 287 U.S. 103 (1932), the Supreme Court, holding that lease bonuses were not consideration for the sale of oil and gas in place (i.e., were not capital gain) but were ordinary income, stated (p. 111):

> [Bonus] payments made by the lessee are consideration for the right which he

---

[12]In fact, the parties have stipulated that the "bonuses were paid without respect to production."

acquires to enter upon and use the land for the purpose of exploiting it, as well as for the ownership of the oil and gas; * * * the bonus payments are paid and retained, regardless of whether oil or gas is found and despite the fact that all which is not abstracted will remain the property of the lessor upon termination of the lease.

Here, petitioners received royalties on production in 1975 from all except one of their leases,[13] and they have been allowed percentage depletion deductions with respect to those royalties. However, the lease bonuses here in issue were not received "with respect to" petitioner's "average daily production" of oil or gas "during the taxable year," and section 613A(c) does not, therefore, allow percentage depletion with respect to them.

It is true, as previously noted, that prior law permitted percentage depletion deductions with respect to oil and gas lease bonuses. But the statute as it then stood (section 613 and its predecessors) made "gross income from the property," without qualification, the base for computing percentage depletion. There was no requirement that the gross income be received with respect to the actual production of oil or gas. The theory underlying the allowance of depletion (whether cost or percentage) on a lease bonus under prior law was that, in a leasing arrangement (as distinguished from a sale or exchange), the initial cash payment is in reality an advance royalty payment in the hands of the lessor which diminishes the value of the lessor's mineral interest by reducing his royalty share in future production. The depletion allowance on his bonus income was designed to compensate him for the diminution in value of his interest thereby sustained. See *Palmer v. Bender*, 287 U.S. 551 (1933); *Murphy Oil Co. v. Burnet*, 287 U.S. 299 (1932); *Burnet v. Harmel*, 287 U.S. 103 (1932). Consequently, if the lessor retained the right to share in the oil or gas if and when produced, the

---

[13]Although sec. 613A(c)(1) refers to "so much of the taxpayer's average daily production," without reference to a taxpayer's separate properties, other provisions in sec. 613A(c) refer to individual properties of the taxpayer: "any property" (sec. 613A(c)(2)(B)), "each property" (sec. 613A(c)(7)(A) and (B)), "the property" (sec. 613A(c)(7)(C)), "each partnership oil or gas property" (sec. 613A(c)(7)(D)). Sec. 614(a) states that the term "property" means "each separate interest owned by the taxpayer in each mineral deposit in each separate tract or parcel of land." We think, therefore, that petitioners' rights to percentage depletion must be tested with respect to each lease. See *Sneed v. Commissioner*, 119 F.2d 767, 769 (5th Cir. 1941), affg. 40 B.T.A. 1136 (1939). For convenience, however, we have not separately discussed their rights with respect to each lease bonus.

bonus was said to be "payment in advance for oil and gas to be extracted." *Herring v. Commissioner*, 293 U.S. 322, 324 (1934).

Although this same rationale continues to support the deduction of cost depletion with respect to lease bonuses,[14] section 613A(c) does not permit the deduction of *percentage* depletion with respect to payments in advance for future production, anticipated production, or oil and gas which may or may not be extracted at some time in the future. That section refers to "production," "aggregate production," and "average daily production" of "domestic crude oil" and "domestic natural gas," "during" the taxpayer's "taxable year" and prescribes computations to be made in the light of "production during the calendar year." The terms "crude oil" and "natural gas" are specifically defined in the section and the word "domestic" as it modifies those terms "refers to production from an oil or gas well located in the United States or in a possession of the United States."[15] The language of the section is so clear that it allows no leeway to "impute production," as petitioners would have us do, to their bonuses so that they can qualify for percentage depletion deductions with respect thereto. Furthermore, the fact that production from some leases was obtained in the same taxable year as the bonuses were received did not convert the lease bonuses—which were received as consideration for the execution of the leases, which were to be retained regardless of whether oil or gas was found, and which did not affect subsequent royalties—into gross income from the actual production of oil or gas.[16]

---

[14] Petitioners do not claim cost depletion with respect to the bonuses received on the execution of any of the leases here in issue.

[15] Sec. 613A(e) provides as follows:

(e) DEFINITIONS.—For purposes of this section—

(1) CRUDE OIL.—The term "crude oil" includes a natural gas liquid recovered from a gas well in lease separators or field facilities.

(2) NATURAL GAS.—The term "natural gas" means any product (other than crude oil) of an oil or gas well if a deduction for depletion is allowable under section 611 with respect to such product.

(3) DOMESTIC.—The term "domestic" refers to production from an oil or gas well located in the United States or in a possession of the United States.

(4) BARREL.—The term "barrel" means 42 United States gallons.

[16] It may be argued that, if the bonuses were theoretically payments in advance for oil or gas to be produced, a proportionate part thereof may be treated as payment for the production received in 1975 and, thus, subject to percentage depletion. However, petitioners have not shown what part (if any) of the bonuses would be allocable to the production in 1975. In any event, for the reasons stated in the text, we think the language of sec. 613A(c) proscribes such treatment. Assuming that the Congress intended the term "production" in sec. 613A(c) to have

Practical problems, moreover, would arise in the application of section 613A(c) if it were interpreted generally to permit the allowance of percentage depletion with respect to lease bonuses. At the time a lease is executed or is assigned, the lessor may not know what mineral will be discovered or (in some cases) what method of recovery will be required to produce it. The section prescribes different formulae for computing a taxpayer's "depletable oil quantity" (section 613A(c)(3)) and a taxpayer's "depletable natural gas quantity" (sec. 613A(c)(4)). An entirely separate set of rules is prescribed with respect to the allowance of depletion on secondary and tertiary production. Sec. 613A(c)(6). If a taxpayer has "excess" production during the taxable year, he must allocate the taxable income from the property between oil and gas production. Sec. 613A(c)(7). Thus, where there is no production from a lease during the taxable year, there may be no way to determine when the bonus is received whether the section 613A(c) limitations on oil or gas and on primary or (in some situations) secondary or tertiary production would apply.

Petitioners contend, in the alternative, that the section 613A(a) prohibition against the deduction of percentage depletion with respect to any "oil or gas well" does not apply to oil and gas lease bonus payments because such payments were received without reference to the existence of a "well" as such. This argument is without merit. Section 611(a) is the operative section, and it grants the allowance for depletion in the case of "oil and gas wells." Under the law prior to the enactment of the Tax Reduction Act of 1975, lease bonuses were treated as gross income from "oil and gas wells" within the meaning of section 611(a) and its predecessors. See *Herring v. Commissioner, supra* at 324–325. Section 613A(a) expressly provides that "the allowance for depletion under section 611" with respect to any "oil or gas well" shall generally be computed without regard to percentage depletion under section 613. Clearly, therefore, oil and gas lease bonuses fall within the general prohibition of this rule.

---

the same meaning as it has in the oil and gas industry, we note that it has been held that advance payments for gas to be produced do not constitute payment for production within the meaning of an oil and gas lease. *Monsanto Co. v. Tyrrell*, 537 S.W.2d 135, 137 (Tex. Ct. App. 1976).

We conclude that none of petitioners' lease bonuses qualify for the percentage depletion deduction. We understand section 613A(c) to be a limited exception to the repeal of percentage depletion in the case of oil and gas wells. It is cast in terms of the actual production of barrels of crude oil and cubic feet of natural gas. Given the language of the statute and the absence of any legislative history indicating that the language does not mean what it says, percentage depletion is not allowable on lease bonuses. We can find nothing in the statute or legislative history to authorize the conversion of bonus dollars into barrels of oil or cubic feet of gas for percentage depletion purposes.

To reflect the foregoing,

*Decision will be entered for the respondent.*

Reviewed by the Court.

NIMS, *J.*, did not participate in the consideration or disposition of this case.

GOFFE, *J.*, concurring: For the reasons set forth in my concurring opinion in *Engle v. Commissioner*, 76 T.C. 915, 927 (1981), I concur in the holding and rationale of the majority opinion. However, I again feel a need to briefly address some of the statements made in the dissenting opinion.

The dissent perceives in the majority opinion an implication that percentage depletion would not be allowed with respect to both past and future production. I, of course, agree that future possible production cannot support a present percentage depletion deduction. Because there was no actual past production in the case before us, the majority was not compelled to, and did not, make a holding concerning the legal effect of such a situation. The majority opinion, read as a whole, certainly supports the conclusion I have reached that both past and present actual production will support a present-year percentage depletion deduction. I have elaborated this theory at length elsewhere,[1] so I will not dwell on it here.

The dissent is troubled by the perceived implication of the

---

[1]*Engle v. Commissioner*, 76 T.C. 915, 928–930 (1981)(Goffe, J., concurring).

majority opinion that lease bonuses are not payments for oil or gas, and that such an implication is contrary to established case law. The majority implies no such thing. No one denies that lease bonuses are payments for oil or gas. However, it is equally undeniable that, as the majority states at page 955 of its opinion, lease bonuses are not paid with respect to production. In fact, bonus payments are paid and retained regardless of whether oil or gas is found or produced. *Burnet v. Harmel,* 287 U.S. 103, 111 (1932). Sales of oil and gas necessarily imply production but payments to the owner of a mineral interest for the privilege of exploring for oil or gas do not in any way imply that oil or gas has been produced or that it even exists. Under section 613A, I.R.C. 1954,[2] there no longer exists any percentage depletion without actual production. Since lease bonuses are not paid and received "with respect to" actual, existing production, they are no longer subject to percentage depletion.

Finally, I would reemphasize one of the major practical problems with the dissent's proposed interpretation, i.e., how to convert bonuses into units of production for purposes of determining a taxpayer's average daily production under section 613A(c). What prices would one use to convert a $10,000 (or $100,000) bonus into a number of barrels of oil or into a quantity of cubic feet of gas? The dissent never addresses, let alone answers, this question. The question is not answered under the controlling law, probably because no one foresaw an interpretation such as the dissent's that would require such a conversion. The majority's approach avoids the necessity of asking such unanswerable, and uncontemplated, questions.

FAY, *J.,* dissenting: I respectfully dissent. In my opinion, lease bonuses do in fact represent "production" for purposes of section 613A(c).[1] As most of the reasons for my disagreement with the majority position are set forth at length in my dissenting opinion in *Engle v. Commissioner,* 76 T.C. 915, 940 (1981), my comments will be brief.

---

[2]All section references are to the Internal Revenue Code of 1954 as amended.

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.

It seems that the majority opinion denies percentage depletion deductions based on the lease bonuses in this case because those lease bonuses were not income directly traceable to extraction occurring in the same taxable year as the lease bonuses were received. In other words, the majority opinion seems to require both extraction and *that* extraction's income to occur in the same taxable year for a percentage depletion deduction to be allowable.[2] Such reasoning would, in effect, disallow percentage depletion with respect to any oil sold in a taxable year other than the taxable year that oil is actually extracted. As I noted in *Engle v. Commissioner, supra* at 941 (Fay, J., dissenting), that is obviously not what Congress intended.[3]

I am also troubled by the implication in the majority opinion that lease bonuses are not payments for oil or gas. It is well settled that lease bonuses are considered payments for oil or gas for depletion purposes. As the United States Supreme Court said in *Anderson v. Helvering*, 310 U.S. 404, 409 (1940), "Cash bonus payments, when included in a royalty lease, are regarded as advance royalties, and are given the same tax consequences." See *Herring v. Commissioner*, 293 U.S. 322 (1934); *Burnet v.*

---

[2]However, the majority, *supra* at 957, also seems to say that only future extraction is tainted. That may imply that extraction occurring in a year previous to that extraction's income could serve as a basis for percentage depletion. See sec. 1.613A(c)–3(a)(4), example (*4*), Proposed Regs., 42 Fed. Reg. 24281 (May 13, 1977). See also *Engle v. Commissioner*, 76 T.C. 915, 940 (1981) (Fay, J., dissenting).

[3]The majority opinion states that its conclusion "is consistent with the views of text writers" (majority, *supra* at note 8), and cites two authorities. In F. Burke & R. Bowhay, Income Taxation of Natural Resources, sec. 8132 (1980), the authors do in fact state that lease bonuses do not qualify for percentage depletion. However, they do not analyze the issue and rely only on the proposed regulations promulgated under sec. 613A(c). Proposed regulations, of course, represent no more than respondent's litigating position. *F. W. Woolworth Co. v. Commissioner*, 54 T.C. 1233, 1265–1266 (1970). In Miller's Oil & Gas Federal Income Taxation, sec. 31–3, p. 580 (J. Houghton ed. 1980), the authors reach the same conclusion as Burke & Bowhay. But they do point out the incongruity of distinguishing between pre-extraction income and post-extraction income. J. Houghton, *supra* at 580–581. Furthermore, they point out that the proposed regulations have been severely criticized on the very grounds which form the basis for my dissent. J. Houghton, *supra* at 581 n. 15.

The majority opinion completely omits any mention of those writers reaching a result opposite its own. See Linden, "Oil and Gas Depletion Regulations: Complexity Compounded," 24 Oil & Gas Tax Q. 351, 380 (1976) (excluding future extraction from "production" for purposes of sec. 613A(c) overrules prior case law without a clear statutory mandate); Bravenec, "Continued Availability of Percentage Depletion on Oil and Gas," 23 Oil & Gas Tax Q. 204, 212 (1975) ("the construction of 'production' as sales for all purposes under Section 613A(c) is highly desirable"). In fact, I have been unable to locate any author to date who has analyzed the issue involved in this case in depth and agrees with the proposed regulations.

*Harmel*, 287 U.S. 103, 112 (1932) (bonus and royalties are both consideration for the lease, neither are capital gains); *Palmer v. Bender*, 287 U.S. 551, 557–558 (1933) (lessor entitled to depletion on bonus and royalties). See also *Shamrock Oil & Gas Corp. v. Commissioner*, 35 T.C. 979 (1961), affd. 346 F.2d 377 (5th Cir. 1965), cert. denied 382 U.S. 892 (1965).

The majority opinion discounts the above line of authority as, in effect, having been overruled by section 613A. Majority, *supra* at 956. I disagree. In the first place, "gross income from the property" always has been necessarily related to extraction (sec. 1.613–3(a), Income Tax Regs.); and, second, "gross income from the property" is still the percentage depletion calculation base for purposes of applying sec. 613A(c)(1) ("the allowance for depletion * * * shall be computed in accordance with section 613").

I emphasize that I am not maintaining that "production" does not mean extraction. Upon that point, the majority and I agree.[4] I do maintain that "production" is not limited to current extraction but includes past or future extraction as well. In my view, "production during the taxable year" means the extraction (past, current, or future) properly attributable to that year. The number of barrels of extraction properly attributable to a year is easily measured by income. Indeed, such always has been the case under section 613, which explicitly ties percentage depletion to income. The logical bases for my position are fully elucidated in my dissenting opinion in *Engle v. Commissioner, supra*.[5]

---

[4]I note that in defining "production" to mean extraction, the majority cites Texas cases in which "production" was held to mean current extraction. However, none of those cases dealt with either depletion or Federal taxation. Rather, they were contract cases involving construction of oil and gas leases with the courts' inquiry being what the parties to the various contracts meant by "production." Accordingly, those cases should have no bearing on the interpretation of "production" as that term is used in sec. 613A(c). As the United States Supreme Court said in *Burnet v. Harmel*, 287 U.S. 103, 110 (1932), "State law may control only when the operation of the federal taxing act, by express act or necessary implication, makes its own operation dependent on state law."

[5]Additionally, a number of the points made by the majority opinion in this case have been fully addressed in my dissenting opinion in *Engle v. Commissioner*, 76 T.C. 915, 940–948 (1981). The majority's conclusion that there is no helpful legislative history (majority, *supra* at 954) is a vast overstatement. See *Engle v. Commissioner, supra* at 946 n. 13 (Fay, J., dissenting). The majority's reliance on the parties' stipulation of no "production" (majority, *supra* at note 12), ignores the obvious meaning of that stipulation. *See Engle v. Commissioner, supra* at 940 n. 2 (Fay, J., dissenting). Finally, the practical problems which the majority envisages flowing from my interpretation (majority, *supra* at 958) are addressed in *Engle v. Commissioner, supra* at 948 n. 15 (Fay, J., dissenting).

In this case, I would allow petitioners a percentage depletion deduction calculated on all the lease bonuses received by them in 1975. Those bonuses represent extraction, albeit future extraction, for depletion purposes; that extraction is properly attributable to 1975, the taxable year in which the petitioners received income from that extraction; and, as stipulated by the parties, inclusion of the extraction represented by the lease bonuses in petitioners' 1975 "production" would not cause petitioners to exceed their 1975 "depletable oil quantity." Accordingly, I would hold for petitioners.